HadWtuc1                    Charge

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                         16 Cr. 91 (PKC)

5   SCOTT TUCKER and
    TIMOTHY MUIR,                         Trial
6
               Defendants.
7
    ------------------------------x
8                                         New York, N.Y.
                                          October 13, 2017
9                                         9:35 a.m.

10

    Before:
11                  HON. P. KEVIN CASTEL

12                                        District Judge
                                             and a jury
13                        APPEARANCES

14  JOON H. KIM
         Acting United States Attorney for the
15       Southern District of New York
    BY:  NIKETH V. VELAMOOR
16       HAGAN C. SCOTTEN
         SAGAR K. RAVI
17       Assistant United States Attorneys

18  FREEMAN NOOTER & GINSBERG
         Attorneys for Defendant Tucker
19  BY:  LEE A. GINSBERG
         NADJIA LIMANI
20          -and-
    STAMPUR & ROTH
21  BY:  JAMES M. ROTH

22  BATH & EDMONDS, P.A.
         Attorneys for Defendant Muir
23  BY:  THOMAS J. BATH
            -and-
24  BEVERLY VAN NESS

25

1            (Trial resumed)

2            THE COURT:  Please remain standing for our jurors.

3            (Jury present)

4            THE COURT:  Please be seated.

5            Good morning, ladies and gentlemen.  I hope you had a

6    pleasant evening, and congratulations to the New York Yankees

7    on last night's win.

8            I'm going to pick up where I left off, and I'm going

9    to begin with Count One, which is the charge of conspiracy to

10   collect unlawful debts.  You're going to see that I'm going to

11   spend some time on this count because some of the terms that

12   will apply to some of the other counts will apply here and now,

13   and those definitions will apply to the later counts and I

14   won't have to repeat them for you.  That's why this first count

15   will take a little bit longer than the other counts.

16           Count One charges that defendants Tucker and Muir

17   agreed together and with others to conduct or participate in

18   the conduct of the affairs of an enterprise through the

19   collection of an unlawful debt.  The indictment calls this

20   enterprise the Tucker Payday Lending Organization.  To find a

21   defendant guilty of Count One, the government must prove beyond

22   a reasonable doubt the following elements.

23           Now, I'm going to go through each of these, so I'm

24   just going to give them to you first and then we'll talk about

25   each one.

HadWtuc1                        Charge

1              First, that the charged conspiracy existed during the
2      period alleged in the indictment;
3              Second, that the defendant intentionally joined and
4      participated in this conspiracy at some point during its
5      existence.
6              Now, these first two elements will be applied to all
7      three charged conspiracies, except where I tell you otherwise.
8      The next four elements describe the alleged illegal objects of
9      the conspiracy charged in Count One.
10              The third element is that the enterprise alleged in
11      the indictment, referred to as the Tucker Payday Lending
12      Organization, existed;
13              Fourth, that the Tucker Payday Lending Organization
14      affected interstate commerce;
15              Fifth, that the defendant was employed by or
16      associated with the Tucker Payday Lending Organization; and
17              Sixth, that the defendant willfully and knowingly
18      conspired with at least one other person to participate in the
19      conduct of the affairs of that enterprise through the
20      collection of an unlawful debt.
21              Count One, the first element.
22              The first element requires the government to prove
23      beyond a reasonable doubt the existence of a conspiracy.  A
24      conspiracy is an agreement, or an understanding, by two or more
25      persons to accomplish one or more unlawful objectives by

HadWtuc1                    Charge

1    working together.  In this case, the government alleges that

2    the unlawful purpose of the conspiracy was to operate an

3    enterprise engaged in the collection of an unlawful debt.

4            To prove that a conspiracy exists, the government must

5    prove that two or more people explicitly or implicitly came to

6    an understanding to achieve the unlawful object charged in the

7    count.  It is not necessary for you to find that the agreement

8    was ever expressed orally or in writing, but the government

9    does have to prove that there was a mutual understanding

10   between at least two people.

11           The indictment charges that the conspiracy lasted from

12   in or about 1997 until at least in or about August 2013.  It is

13   not necessary for the government to prove that the conspiracy

14   lasted throughout the entire period alleged, but only that it

15   existed for some period within that time frame.

16           The second element that the government has to prove

17   beyond a reasonable doubt is that each defendant intentionally

18   joined the conspiracy, either at the outset or at some later

19   point.  To prove this element, the government must prove beyond

20   a reasonable doubt that the defendant knowingly and willfully

21   joined the conspiracy for the purpose of furthering its

22   unlawful object, which is the collection of an unlawful debt.

23           Knowingly means to act consciously and voluntarily,

24   rather than by mistake or accident.  Willfully means to act

25   deliberately and with a purpose to do something that the law

forbids.  The defendant need not have known that he was
breaking any particular law, but he must have been aware of the
generally unlawful nature of his act.  The question of whether
a person acted willfully and knowingly is a question of fact
for you to determine, like any other fact question.  This
question involves the defendant's state of mind.

          It is not necessary that a defendant be fully informed
of all the details of the conspiracy, or of all of its
participants.  He need only know one other member of the
conspiracy.  He can join the conspiracy at any point and need
not have received any benefit in return.  On the other hand,
mere association between the defendant and a conspirator does
not make the defendant a member of the conspiracy, even if he
knows that the conspiracy exists.  In other words, knowledge
and association are not enough; the defendant must have
intentionally participated in the conspiracy with the purpose
of helping to achieve its unlawful purpose.

          Once you find that a conspiracy existed and that the
defendant was a member, you may take into account against that
defendant any acts or statements made by any of his
coconspirators, even if such acts or statements were not made
in the presence of the defendant or were made without his
knowledge.

          Once a conspiracy is formed, it is presumed to
continue until either its objective is accomplished, or until

1    there is some affirmative act of termination by the members.

2    Similarly, once a person is found to be a member of a

3    conspiracy, he is presumed to continue as a member of that

4    conspiracy until the conspiracy is terminated, unless it is

5    shown by some affirmative proof that the person withdrew and

6    disassociated himself from it.

7           The instructions that I have given you on the

8    definition of conspiracy, the existence of a conspiracy and

9    membership in a conspiracy apply to Count One as well as to the

10   two other conspiracies that I will talk to you about: the

11   conspiracy to commit wire fraud and the conspiracy to commit

12   money laundering.

13          Now, the objects of each of the conspiracies are

14   different, and that's what I'm going to talk about next.

15          The next four elements relate to the object of the

16   conspiracy in Count One.

17          The third element is that the government must prove

18   beyond a reasonable doubt the existence of an enterprise that

19   the indictment calls the Tucker Payday Lending Organization.

20   The alleged purpose of this enterprise was to enrich its

21   leaders, members and associates through the collection of

22   unlawful debt.  The indictment further charges that the

23   enterprise was in the business of lending money at rates that

24   were unlawful under state usury laws, and that the rates of

25   interest charged were at least twice the maximum enforceable

HadWtuc1                         Charge

1    rates of interest.

2           I'll talk more about usury and maximum enforceable

3    rates of interest and rates of interest a little later in the

4    charge.

5           An enterprise does not have to have a particular name,

6    or for that matter, have any name at all.  Nor must it be

7    registered or licensed as an enterprise.  It does not have to

8    be a commonly recognized legal entity, such as a corporation or

9    a partnership.  It may be a group of people informally

10   associated together for a common purpose of engaging in a

11   course of conduct.  In addition to having a common purpose,

12   this group of people must have a core of personnel who function

13   as a continuing unit.

14          The enterprise must continue to exist in substantially

15   similar form throughout the period charged.  This does not mean

16   that the membership must remain exactly identical, but the

17   enterprise must have a recognizable core that continues during

18   a substantial time period within the time frame charged in the

19   indictment.

20          The fourth element the government must prove beyond a

21   reasonable doubt is that the Tucker Payday Lending Organization

22   was engaged in or had an effect upon interstate commerce.

23   Interstate commerce includes the movement of goods, services,

24   money and individuals between states.

25          The effect upon interstate commerce need not be

HadWtuc1                        Charge

1    substantial.  Nor is it necessary that the effect on interstate

2    commerce have been an adverse or negative effect.

3           It is not necessary to prove that the acts of the

4    defendant you are considering affected interstate commerce as

5    long as the acts of the Tucker Payday Lending Organization

6    itself had such an effect, if you have had that there was such

7    an enterprise.

8           Finally, the government is not required to prove that

9    the defendant knew he was affecting interstate commerce.  All

10   that is necessary is that you find beyond a reasonable doubt

11   that the Tucker Payday Lending Organization engaged in or

12   affected interstate commerce in some minimal way.

13          The fifth element the government must prove beyond a

14   reasonable doubt with respect to Count One is that the

15   defendant you are considering was associated with or was

16   employed by the Tucker Payday Lending Organization.

17          It is not required that the defendant you are

18   considering have been associated with or employed by the

19   enterprise for the entire time that the Tucker Payday Lending

20   Organization existed.  But the government is required to prove

21   beyond a reasonable doubt that at some time during the period

22   charged in the indictment, the defendant you are considering

23   was associated with or employed by the Tucker Payday Lending

24   Organization.

25          The government must also show that the defendant's

association with the Tucker Payday Lending Organization was

knowing -- that is, made with knowledge of the existence of the

Tucker Payday Lending Organization through a general awareness

of some of its purposes, activities and personnel.  A person

cannot be associated with or employed by an enterprise if he

does not know of the enterprise's existence or the nature of

its activities.

The sixth and final element the government must prove

beyond a reasonable doubt with respect to Count One is that the

defendant willfully and knowingly agreed to participate,

directly or indirectly, in the affairs of the Tucker payday

organization through collection of an unlawful debt.

"Usury" is the name the law gives to lending money at

an illegally high rate of interest.  For the purpose of this

case, an "unlawful debt" means a debt that is unenforceable

under state law because of the laws relating to usury, and

which was incurred in connection with the business of lending

money at a rate usurious under state law, where the usurious

rate is at least twice the enforceable rate under state law.

Usury laws can differ from one state to another, as

can enforceable rates of interest.  In New York, the highest

enforceable rate of interest on consumer loans is 25 percent

per year, and loans above that rate are usurious and

unenforceable.  So as to New York, the collection of a consumer

debt by a business engaged in lending money that carries an

HadWtuc1                    Charge

annual interest rate of 50 percent or more is the collection of
an unlawful debt.  As you can see in that example, a rate of 50
percent is twice the highest enforceable rate of 25 percent.

          Some states, including Connecticut, Maryland,
Massachusetts, Montana, New Hampshire, New Jersey,
Pennsylvania, North Carolina, Ohio, Vermont and Washington,
D.C., have rates of interest different or even higher than New
York, but none of these states allow the enforcement of a
consumer loan with a rate of interest greater than 36 percent.
So in these states, the collection of a consumer loan by a
business engaged in money lending that carries an annual
interest rate of 72 percent -- that's two times 36 -- would be
an unlawful debt.

          The government is not required to prove that the
defendant knew what the usury rates were in the states that the
borrowers lived.  For example, in the case of a New York
borrower, the government does not need to prove that the
defendant you are considering knew that New York's highest
enforceable rate of interest on consumer loans was 25 percent.
Nor does the government have to prove that a defendant knew the
enforceable rate of interest in any other state.  In this case,
ignorance of the specific terms of any law is no excuse to the
charged conduct.  The government can meet its burden on the
"willfully" and "knowingly" element by proving that a defendant
acted deliberately, with knowledge of the actual interest rate

HadWtuc1                          Charge

1      charged on the loan.  It may also meet its burden by showing a

2      defendant acted deliberately, with an awareness of the

3      generally unlawful nature of the loan, and also that it was the

4      practice of the business engaged in lending money to make such

5      loans.

6              The focus of the sixth element is on the defendant's

7      agreement to participate in the objective of the Tucker Payday

8      Lending Organization to collect an unlawful debt.  To prove the

9      defendant's agreement, the government need not prove that the

10     defendant you are considering actually engaged in the

11     collection of unlawful debt or even agreed to engage in the

12     collection of an unlawful debt, as long as the government

13     proves that he participated in some manner in the overall

14     objective of the conspiracy.

15             For the purpose of Count One, the government does not

16     have to prove that the defendant himself committed any

17     particular act concerning the collection of debt.  The

18     government only has to prove that the defendant entered into

19     the charged conspiracy and participated in the conspiracy

20     knowing that he, or any of his coconspirators, would engage in

21     the collection of unlawful debt.

22             That completes Count One, ladies and gentlemen.  Let's

23     stand up and stretch and take a deep breath.  OK.

24             Counts Two through Four of the indictment charge the

25     defendants with substantive violations of law.  It is a federal

1    crime for any person who is employed by or associated with an

2    enterprise that is engaged in or affects interstate commerce to

3    conduct or to participate in the conduct of the affairs of that

4    enterprise through the collection of an unlawful debt.

5              In order to find the defendant guilty of a substantive

6    violation, you must find that the government proved each of the

7    following five elements beyond a reasonable doubt:

8              First, that the enterprise alleged in the indictment,

9    referred to as the Tucker Payday Lending Organization, existed;

10             Second, that the Tucker Payday Lending Organization

11   affected interstate commerce;

12             Third, that the defendant was associated with or

13   employed by the Tucker Payday Lending Organization;

14             Fourth, that the defendant willfully and knowingly

15   engaged in the collection of unlawful debt; and

16             Fifth, that the defendant conducted or participated in

17   the conduct or the affairs of the Tucker Payday Lending

18   Organization through the collection of unlawful debt.

19             As you have seen, the first, second and third elements

20   of the substantive offenses are identical to the third, fourth

21   and fifth elements of the conspiracy offense charged in Count

22   One.  With regard to these elements, you should follow the

23   instructions that I've given you with regard to Count One.

24             The principal difference between Count One and Counts

25   Two through Four relate to the fourth and fifth elements

HadWtuc1                          Charge

1    included in Counts Two through Four.  As I have instructed you

2    in the conspiracy count, the defendant you are considering need

3    only have conspired or agreed to participate in the conduct of

4    the affairs of the Tucker Payday Lending Organization, knowing

5    that he, or any of his coconspirators, agreed to the collection

6    of unlawful debt.  But under Counts Two through Four, which are

7    the substantive counts, you cannot convict the defendant you

8    are considering unless you find that he actually conducted or

9    participated in the conduct of the Tucker Payday Lending

10   Organization, directly or indirectly, through the collection of

11   unlawful debt.

12           The fourth element, then, on Counts Two through Four

13   that the government must prove beyond a reasonable doubt is

14   that the defendant willfully and knowingly engaged in the

15   collection of unlawful debt.  Willfully, knowingly and

16   unlawfully have the same meaning on which I have instructed you

17   previously.

18           For each of Counts Two, Three and Four, the indictment

19   alleges five specific unlawful debts that the defendant engaged

20   in collecting.  The government does not need to prove the

21   existence of two or more collections of unlawful debt forming a

22   pattern.  Rather, each individual instance of collection of an

23   unlawful debt constitutes a separate substantive violation.

24   You must, however, unanimously agree that the government has

25   proven beyond a reasonable doubt that the defendant engaged in

HadWtuc1                          Charge

1    collecting at least one particular debt named in a count before

2    you may convict the defendant on that count.

3            The fifth element on Counts Two through Four is that

4    the defendant conducted or participated in the conduct of the

5    affairs of the Tucker Payday Lending Organization, directly or

6    indirectly, through the collection of unlawful debt.

7            It is not enough that there be an enterprise and that

8    the defendant engaged in the collection of unlawful debt.  More

9    is required.  There must be a meaningful connection between the

10   defendant engaging in the collection of unlawful debt and the

11   affairs of the enterprise.  The defendant must have conducted

12   or participated in the enterprise by collecting or aiding in

13   the collection of unlawful debt.  It is not necessary, however,

14   that the collection of unlawful debt directly furthers the

15   enterprise's activities.  It is enough that the defendant's

16   collection of unlawful debt was related to the enterprise's

17   activities.

18           The fifth element also requires that the defendant

19   have some role in the operation, direction or management of the

20   enterprise.  To conduct or participate in the conduct of the

21   enterprise means that the defendant must have played some part

22   of the operation or management of the enterprise.  The

23   government is not required to prove that a defendant was a

24   member of upper management, and an enterprise is operated not

25   only by those in upper management, but also by those lower down

HadWtuc1                          Charge

in the enterprise who act under the direction of upper

management.  It is sufficient if you find that defendant

provided substantial assistance to those who conducted the

enterprise and thereby was involved in playing a part in the

direction of the affairs of the enterprise through collection

of unlawful debt.

Now, the defendant you are considering may be

convicted on Counts Two through Four if he aided and abetted --

aided and abetted -- others in committing these crimes.

The aiding and abetting statute provides that:

"Whoever commits an offense against the United States

or aids, abets, counsels, commands, induces or procures its

commission, is punishable as a principal."

It is not necessary for the government to show that

the defendant you are considering himself physically committed

the crime with which he is charged in order for you to find the

defendant guilty.  If the government proves beyond a reasonable

doubt that the defendant you are considering was an aider or

abettor of the crime charged, you should find the defendant

guilty of that crime.

A person who aids or abets another to commit an

offense is just as guilty of that offense as if he committed it

himself.  No one can be convicted of aiding and abetting the

criminal acts of another if no crime was committed by the other

person in the first place.

HadWtuc1                        Charge

1            In order to aid or abet another to commit a crime, it

2    is necessary that the defendant willfully and knowingly

3    associate himself in some way with the crime, and that he

4    willfully and knowingly participate in the crime by doing some

5    act to help make the crime succeed.

6            The definitions of "willfully" and "knowingly" that I

7    have previously given apply here.

8            To establish that a defendant participated in the

9    commission of a crime, the government must prove that the

10   defendant engaged in some affirmative conduct or overt act for

11   the specific purpose of bringing about that crime.

12           The mere presence of a defendant where a crime is

13   being committed, even coupled with knowledge by the defendant

14   that a crime is being committed, or merely associating with

15   others who are committing a crime, is not sufficient to

16   establish aiding and abetting.  One who has no knowledge that a

17   crime is being committed or is about to be committed but

18   inadvertently does something that aids in the commission of the

19   crime is not an aider or abettor.  An aider or abettor must

20   know that the crime is being committed and act in a way which

21   is intended to bring about the success of the criminal venture.

22           I will now move to the second way that a defendant may

23   be found guilty of aiding and abetting the crimes charged in

24   Counts Two through Four, and that is by willfully causing the

25   commission of a crime.

HadWtuc1                         Charge

1              What does the term "willfully causing" mean?  It does

2      not mean that the defendant in question needs to have

3      physically committed the crime or supervised or participated in

4      the actual commission of the crime charged in the indictment.

5      The meaning of the term "willfully cause" can be found in the

6      answers to the following questions:

7              First, did the defendant you are considering take some

8      action without which the crime would not have succeeded?

9              Second, did the defendant you are considering intend

10     that the crime would actually be committed by others?

11             If the government proves that the answers to both of

12     these questions are yes, then the particular defendant is

13     guilty of the crime charged just as if he had directly

14     committed the crime.  To find that defendant guilty under the

15     provisions of the statute, the government need not prove that

16     he acted through a guilty intermediary; that is, a defendant

17     could be found guilty even if he acted through someone who is

18     entirely innocent of the crime charged in the indictment.

19             You have heard evidence that defendant Scott Tucker

20     received legal advice from lawyers, and you may consider that

21     evidence in deciding whether Mr. Tucker acted willfully and

22     with knowledge.  However, the mere consultation with a lawyer

23     is not itself a defense to criminal conduct.

24             In considering whether Mr. Tucker acted willfully and

25     with knowledge as to Counts One through Four, you must consider

HadWtuc1                        Charge

1    whether Mr. Tucker honestly and in good faith sought the advice

2    of a competent lawyer as to what he may lawfully do.  This

3    means that he sought and obtained legal advice regarding a

4    proposed course of conduct before proceeding with that course

5    of conduct.  You must also consider whether Mr. Tucker fully

6    and honestly presented all relevant facts to the lawyer, and

7    whether he honestly followed such advice in good faith, relying

8    on it and believing it to be correct.  In short, you should

9    consider whether, in seeking and obtaining advice from lawyers,

10   Mr. Tucker intended for his acts to be lawful.  If he did so, a

11   defendant cannot be convicted of a crime that requires willful

12   and unlawful intent, even if such advice were an inaccurate

13   description of the law.

14        On the other hand, no defendant can willfully and

15   knowingly violate the law and excuse himself from the

16   consequences of his conduct by asserting that he followed the

17   advice of a lawyer.  Whether Mr. Tucker acted in good faith for

18   the purpose of seeking guidance as to the specific acts in this

19   case before engaging in those acts, whether he made a full and

20   complete presentation of the facts to his lawyer, and whether

21   he acted substantially in accordance with the advice received,

22   are questions for you to determine.

23        You have heard reference during the trial to the term

24   "tribal sovereign immunity."  Tribal sovereignty means that

25   federally recognized Indian tribes, like states, possess

HadWtuc1                          Charge

1    certain powers of self-government.  Tribal sovereign immunity

2    is a principle of federal law that protects federally

3    recognized Indian tribes from being sued by states or others.

4    It does not preclude suits by the federal government against a

5    tribe.  It limits the means by which a state can enforce some

6    of its laws against a federally recognized tribe.  Tribal

7    sovereign immunity does not provide a tribe or its members with

8    any rights to violate the law of any state, but it does limit a

9    state's ability to enforce its laws against a tribe.  The

10   tribes mentioned in this case are immune from suit by any

11   state, including under a criminal usury statute.  Immunity,

12   however, does not make the conduct of the tribe lawful.

13          That completes the instructions on Counts Two through

14   Four.  Let's stand up and stretch again, with the deep breath.

15          Count Five charges both defendants with conspiracy to

16   commit wire fraud.  To prove Count Five, the government must

17   prove beyond a reasonable doubt two elements:

18          First, that the charged conspiracy to commit wire

19   fraud existed during the period alleged in the indictment; and

20          Second, that the defendant intentionally joined and

21   participated in this conspiracy at some point during its

22   existence with knowledge of its unlawful objective.

23          The indictment alleges that the object of the

24   conspiracy in Count Five was to commit wire fraud, and the wire

25   fraud itself, the substantive count, is Count Six.

1          I have instructed you previously on two elements of

2     conspiracy, and you should follow those instructions.  You must

3     find that the conspiracy existed and that the defendant

4     knowingly joined the conspiracy during the period of the

5     conspiracy with knowledge of its unlawful object.

6          The period of the conspiracy is alleged to be from at

7     least in or about 2004 up to and including in or about August

8     2013.

9          Count Six of the indictment charges both defendants

10    with violating the wire fraud statute.  In order to prove a

11    defendant guilty of wire fraud, the government must establish

12    beyond a reasonable doubt each of the following three elements:

13         First, that on or about the times alleged in the

14    indictment -- that is, from in or about 2004 through in or

15    about August 2013 -- there was a scheme or artifice to defraud

16    others of money or property by false or fraudulent pretenses,

17    representations or promises;

18         Second, that the defendant you are considering

19    willfully and knowingly devised or participated in the scheme

20    or artifice to defraud with knowledge of its nature and with

21    specific intent to defraud;

22         Third, in the execution of that scheme, the defendant

23    you are considering used, or caused the use by others, of

24    interstate wires as specified in the indictment.

25         The first element the government must prove beyond a

1    reasonable doubt is the existence of a scheme or artifice to

2    defraud others of money or property by means of false or

3    fraudulent pretenses, representations or promises.

4           A "scheme or artifice" is simply a plan, device or

5    course of conduct to accomplish an objective.  "Fraud" is a

6    general term.  It is a term that includes all the possible

7    means by which a person seeks to gain some unfair advantage

8    over another person by false representations, false suggestion,

9    false pretenses or concealment of the truth.  The unfair

10   advantage sought can involve money, property or other things of

11   value.

12          Thus, a "scheme to defraud" is merely a plan to

13   deprive another of money or property by trick, deceit,

14   deception or swindle.  In this case, the scheme to defraud is

15   alleged to have been carried out by making false or fraudulent

16   statements, representations, claims and documents.  A

17   statement, representation, claim or document is false if it is

18   untrue when made and was then known to be untrue by the person

19   making it or causing it to be made.  A representation or

20   statement is fraudulent if it was falsely made with the

21   intention to deceive.  Deceitful statements, half-truths or the

22   concealment of material facts, when there is a duty to disclose

23   them, may also constitute false or fraudulent statements.  So,

24   too, may the expression of an opinion not honestly held

25   constitute a false or fraudulent statement.

1              You may find that a scheme to defraud existed only if

2      the government has proven beyond a reasonable doubt the

3      existence of the scheme alleged in the indictment.  A scheme to

4      defraud need not be shown by direct evidence, but may be

5      established by all the circumstances and facts in the case.

6              The false representations and pretenses involved in

7      the scheme to defraud must be "material."  A material fact is

8      one which reasonably would be expected to be of concern to a

9      reasonable and prudent person relying on the statement in

10     making a decision.  That means if you find a particular

11     statement or omission to have been untruthful or misleading,

12     before you can find that statement or omission to be material,

13     you must also find that the statement or omission was one that

14     would have mattered to a reasonable person in making such a

15     decision.

16             In particular, you must find that the statement or

17     omission was one that would have mattered to a reasonable

18     person in some monetary way.  Actual reliance by a person on

19     the representations is not required.  It is sufficient if the

20     misrepresentation is one that is capable of influencing the

21     person's decision and is intended by the defendant to do so.

22             If you find that the government has sustained its

23     burden of proof that a scheme to defraud others of money or

24     property did exist, as charged, you next should consider the

25     second element.

HadWtuc1                         Charge

1          The second element of wire fraud that the government

2     must establish beyond a reasonable doubt is that the defendant

3     you are considering devised or participated in the fraudulent

4     scheme willfully, knowingly and with the specific intent to

5     defraud.

6          The words "devised" and "participated" are words that

7     you are familiar with, and therefore, I do not need to spend

8     much time defining them.

9          To devise scheme to defraud is to concoct or plan it.

10    To participate in a scheme to defraud means to associate

11    oneself with it with a view and intent toward making it

12    succeed.  While a mere onlooker is not a participant in a

13    scheme to defraud, it is not necessary that a participant be

14    someone who personally and visibly executes the scheme to

15    defraud.

16         In order to satisfy this element, I remind you that it

17    is not necessary for the government to establish that the

18    defendant you are considering originated the scheme to defraud.

19    It is sufficient if you find that a scheme to defraud existed,

20    even if originated by another, and that the defendant, while

21    aware of the scheme's existence, knowingly participated in it.

22         It is also not required that the defendant participate

23    in or have knowledge of all of the operations of the scheme.

24    The guilt of a defendant does not depend on how extensively he

25    participated in the scheme, so long as he participated in the

1    scheme with knowledge of its general scope and purpose.

2         It is not necessary that a defendant have participated

3    in the alleged scheme from the beginning.  A person who comes

4    in at a later point with knowledge of the scheme's general

5    operation, although not necessarily all of its details, and

6    intentionally acts in a way to further the unlawful goals,

7    becomes a member of the scheme and is legally responsible for

8    all that may have been done in the past in furtherance of the

9    criminal objective and all that is done thereafter.

10        As I previously noted, before a defendant may be

11   convicted of the wire fraud charge, he must also be shown to

12   have acted willfully and knowingly and with a specific intent

13   to defraud.  I have previously explained the meaning of

14   willfully and knowingly, and you should apply those

15   instructions here.  For this count, however, the government

16   must prove beyond a reasonable doubt that the defendant acted

17   not only willfully and knowingly, but also with the specific

18   intent to defraud others of money or property.  To act with

19   intent to defraud means to act willfully, and with the specific

20   intent to deceive, for the purpose of causing some financial

21   loss to another.

22        Direct proof of willfulness, knowledge and fraudulent

23   intent is almost never available.  Indeed, it would be a rare

24   case where it could be shown that a person wrote or stated that

25   as of a given time in the past he committed an act with

HadWtuc1                         Charge

1   fraudulent intent.  Such direct proof is not required.

2             The ultimate facts of knowledge and criminal intent

3   may be established by circumstantial evidence, based upon a

4   person's outward manifestations, words, conduct, acts and all

5   the surrounding circumstances disclosed by the evidence and the

6   rational or logical inferences that may be drawn therefrom.  In

7   deciding whether the government has proven whether the

8   defendant you are considering had an intent to defraud, you

9   need not limit yourself to just what the particular defendant

10  said, but you may also look at what the defendant did and what

11  others did in relation to the defendant and the entirety of the

12  surrounding circumstances.

13            The third and final element that the government must

14  prove beyond a reasonable doubt as to the wire fraud is that

15  the interstate wire facilities were used in furtherance of the

16  scheme to defraud.  The term "wire facilities" includes

17  telephones, faxes, emails, radio and television.  Here, the

18  government contends that interstate wire facilities were used.

19            The "interstate" requirement means that the wire

20  communication must pass between two or more states, as, for

21  example, a transmission of computer signals from New York and

22  another state, such as Kansas, Oklahoma or Nebraska.

23            It is not necessary for the defendant you are

24  considering to be directly or personally involved in any wire

25  communication, as long as the communication is reasonably

HadWtuc1                    Charge

1    foreseeable in the execution of the alleged scheme to defraud

2    in which the particular defendant is accused of participating.

3            In this regard, it would be sufficient to establish

4    this element of the crime if the evidence justifies a finding

5    that the defendant caused the wires to be used by others, and

6    this does not mean that the defendant himself must have

7    specifically authorized others to execute a wire communication.

8    When one does an act with knowledge that the use of the wires

9    will follow in the ordinary course of business, or where such

10   use of the wires can reasonably be foreseen, even though not

11   actually intended, then he or she causes the wires to be used.

12           This wire communication requirement is satisfied even

13   if the wire communication was done by a person with no

14   knowledge of the fraudulent scheme, including the victim of the

15   alleged fraud.  The use of the wires need not itself be

16   fraudulent.  Stated another way, the wire communication need

17   not contain any fraudulent representation or even any request

18   for money.  It is sufficient if the wires were used to further

19   or assist in carrying out the scheme to defraud.

20           The government must establish beyond a reasonable

21   doubt the particular use charged in the indictment.  However,

22   the government does not have to prove that the wire was used on

23   the exact date charged in the indictment.  It is sufficient if

24   the evidence establishes beyond a reasonable doubt that the

25   wire was used on a date reasonably near the date alleged in the

HadWtuc1                          Charge

1    indictment.

2         Let me add the following.  Only the wire communication

3    must be reasonably foreseeable, not its interstate component.

4    Thus, if you find that the wire communication was reasonably

5    foreseeable and the interstate wire communications actually

6    took place, then this element is satisfied even if it was not

7    foreseeable that the wire communication would cross state

8    lines.

9         Now, with respect to Count Six, the indictment also

10   charges the defendants with aiding and abetting wire fraud.

11   The definition of aiding and abetting that I previously gave

12   applies here.

13        (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

1            THE COURT:  Since an essential element of wire fraud

2   is an intent to defraud, it follows that good faith on the part

3   of a defendant is a defense to that charge.  A defendant has no

4   burden of establishing a defense of good faith.  The burden is

5   on the government to prove fraudulent intent beyond a

6   reasonable doubt, and proving fraudulent intent proves a lack

7   of good faith.

8            Even false representations or statements, or omissions

9   of material facts, do not amount to a fraud unless done with

10   fraudulent intent.  However misleading or deceptive a plan may

11   be, it is not fraudulent if it was devised or carried out in

12   good faith.  An honest belief in the truth of the

13   representations made by a particular defendant, and an honest

14   belief that all material facts have been disclosed, is a

15   complete defense, however inaccurate the statements may turn

16   out to be.

17            In considering whether or not a particular defendant

18   acted in good faith, you are instructed that a belief by the

19   defendant you are considering, if such belief existed, that

20   ultimately everything would work out so that no one would lose

21   any money does not mean that the defendant acted in good faith.

22            No amount of honest belief on the part of the

23   defendant you are considering that the scheme would ultimately

24   aid others will excuse that defendant, if the defendant had the

25   specific intent to harm the individuals by depriving them of

1   accurate information that was material to their decisions about

2   how to use their assets, even if the defendant sought only to

3   deprive the individuals of accurate information for a limited

4   period of time.

5         Acting with intent to defraud requires acting with a

6   purpose to cause actual financial harm to another.  Actual

7   financial harm includes denying a person or entity access to

8   money.  If a defendant deliberately supplies materially false

9   information in order to obtain money, but believes that no harm

10  will ultimately occur to the person from which he obtained the

11  money -- i.e., that the victim will be better off having

12  entered a lending relationship with the defendant or his

13  associates -- that belief that no harm will result, or even the

14  fact that no harm does result, is no defense.  Thus, if you

15  find that the defendant you are considering intended to inflict

16  harm by obtaining money fraudulently, you may find that the

17  defendant acted with intent to defraud.

18        It is also unimportant whether a victim might have

19  discovered the fraud had he or she probed further.  If you find

20  that a scheme or artifice to defraud existed, it is irrelevant

21  whether you believe that a victim was careless, gullible, or

22  even negligent.

23        Ladies and gentlemen, let's stand up and stretch, with

24  a deep breath.

25        You are truly good-natured people that you can even

HAD8TUC2                         Charge

1    muster a slight smile after listening to me at great length.

2          All right.  Count Seven charges a conspiracy to commit

3    money laundering.  To prove Count Seven, the government must

4    prove beyond a reasonable doubt:

5          First, that the charged conspiracy existed during the

6    period alleged in the indictment;

7          Second, that the defendant intentionally joined and

8    participated in the conspiracy at some point during its

9    existence and with knowledge of its unlawful object.

10          I have previously instructed you on two elements under

11    the law of conspiracy, and you should follow those instructions

12    here.  The period of the conspiracy to commit money laundering

13    is alleged to be from at least in or about 2004 up to and

14    including in or about August 2013.  The indictment alleges that

15    the money laundering conspiracy charged in Count Seven had two

16    objects:

17          The first object of the conspiracy charged in Count

18    Seven was to participate in a financial transaction that

19    involves the proceeds of specified unlawful activity with the

20    intent to promote the carrying on of that activity.  The

21    indictment charges a violation of that federal statute as a

22    substantive crime in Count Eight.  I will describe the elements

23    of Count Eight in a little bit.

24          The second object of the conspiracy charged in Count

25    Seven was to participate in a financial transaction that

1    involves the proceeds of a specified unlawful activity, knowing

2    that the transaction was designed to conceal or disguise the

3    nature, location, source, ownership or control of those

4    proceeds.  The indictment charges violation of that federal

5    statute as a substantive crime in Count Nine.  I will describe

6    the elements of Count Nine after discussing Count Eight.

7         The government need not prove that the defendant you

8    are considering agreed to accomplish both objects in order to

9    convict the defendant of the conspiracy to commit money

10   laundering charged in Count Seven.  Nor must you find that

11   either object was actually accomplished.  An agreement to

12   accomplish either of the two objects is sufficient.  However,

13   the jury must all agree, unanimously agree on the specific

14   object that the defendant you are considering agreed to try to

15   accomplish.

16        Count Eight charges both defendants with committing

17   the substantive crime of money laundering by engaging in

18   financial transactions that involved the proceeds of illegal

19   activity, specifically, the wire fraud charged in Count Six of

20   the indictment, with the intent to promote the carrying on of

21   further wire fraud transactions.  In order to prove a defendant

22   guilty of conspiring to commit this crime, the government must

23   establish beyond a reasonable doubt the following elements:

24        First, that the defendant conducted or attempted to

25   conduct a financial transaction, which I will define for you.

3315

1    That financial transaction must in some way or degree affect

2    interstate commerce;

3            Second, that the defendant conducted or attempted to

4    conduct the financial transaction with property or funds that

5    involved the proceeds of some form of specified unlawful

6    activity;

7            Third, that the defendant engaged in or attempted to

8    engage in the transaction with knowledge that the transaction

9    involved the proceeds of some form of unlawful activity; and

10           Fourth, to engage in the financial transaction with

11   the intent to promote the carrying on of specified unlawful

12   activity.

13           The first element that the government must prove

14   beyond a reasonable doubt in Count Eight is that the defendant

15   conducted or attempted to conduct a financial transaction

16   involving property constituting the proceeds of specified

17   unlawful activity, namely, wire fraud.

18           The term "conduct" includes the action of initiating,

19   concluding, or participating in initiating or concluding a

20   transaction.

21           A "transaction" includes a purchase, sale, loan,

22   pledge, gift, transfer, delivery, or other disposition of

23   property.

24           The term "financial transaction" means a transaction

25   involving a financial institution which is engaged in, or the

1   activities of which affect, interstate commerce in any way or

2   degree, or a transaction which in any way or degree affects

3   interstate commerce and involves the movement of funds by wire

4   or other means, or involves one or more monetary instruments,

5   or involves the transfer of title to any real property,

6   vehicle, vessel or aircraft.

7          As I have previously instructed, the term "interstate

8   commerce" means the movement of goods, services, money, and

9   individuals between states.

10         The second element that the government must prove

11  beyond a reasonable doubt is that the property involved in the

12  financial transaction constituted the proceeds of some form of

13  specified unlawful activity, the.

14         The term "proceeds" means any property derived from or

15  obtained or retained, directly or indirectly through some form

16  of unlawful activity, including gross receipts of such

17  activity.

18         The term "specified unlawful activity" means any one

19  of a variety of offenses defined by the statute.  In this case,

20  the government has alleged that the funds in question were the

21  proceeds of wire fraud.  I instruct that you, as a matter of

22  law, wire fraud falls within the definition of "specified

23  unlawful activity."  However, it is for you to determine

24  whether the funds were the proceeds of the unlawful activity

25  charged in the indictment.

1          The third element that the government must prove

2    beyond a reasonable doubt on Count Eight is that the defendant

3    engaged in or attempted to engage in a financial transaction

4    with knowledge that the transaction involved the proceeds of

5    some form of unlawful activity.

6          To satisfy this element, the government must prove

7    that the defendant you are considering conducted or attempted

8    to conduct a transaction knowing that the property involved in

9    the transaction represented proceeds from some form, though not

10   necessarily which form, of activity that constitutes a felony

11   under state, federal, or foreign law.  Thus, the government

12   does not have to prove that the conspirators specifically knew

13   that the property involved in the transaction represented the

14   proceeds of the wire fraud alleged here.  The government only

15   has to prove that the defendant conducting or attempting to

16   conduct the financial transaction knew that the transaction

17   represented the proceeds of some illegal activity that was a

18   felony.

19          I instruct you that, as a matter of law, in New York

20   it is a felony to take or receive any money as interest on a

21   loan at a rate exceeding 25 percent per year, although whether

22   that occurred in this case is a matter of fact that you must

23   determine for yourself.

24          The fourth element which the government must prove

25   beyond a reasonable doubt is that the defendant you are

considering engaged in or attempted to engage in the financial

transaction with intent to promote the carrying on of specified

unlawful activity, namely, wire fraud.

To act intentionally means to act willfully, not by

mistake or accident, with the deliberate purpose of promoting,

facilitating or assisting the carrying on of a wire fraud.  If

you find that the defendant acted with the intention or

deliberate purpose of promoting, facilitating, or assisting in

the carrying on of a wire fraud, then the fourth element is

satisfied.

Count Nine charges both defendants with committing

money laundering by engaging in financial transactions that

involved the proceeds of wire fraud with the intent to conceal

the nature, source, location, ownership or control of those

proceeds.  In order to prove the defendant you are considering

guilty of this crime, the government must establish beyond a

reasonable doubt:

First, that the defendant conducted or attempted to

conduct a financial transaction;

Second, that the defendant conducted or attempted to

conduct the financial transaction with property or funds that

involved the proceeds of some form of specified unlawful

activity;

Third, that the defendant engaged in or attempted to

engage in the transaction with knowledge that the transaction

1    involved the proceeds of some form of unlawful activity; and

2              Fourth, that the defendant engaged in or attempted to

3    engage in the financial transaction knowing that the

4    transaction was designed in whole or in part to conceal or

5    disguise the nature, location, source, ownership or control of

6    the proceeds of specified unlawful activity.

7              The first three of these elements are identical to the

8    elements for the money laundering crime charged in Count Eight.

9    Only the fourth element, regarding the purpose of the financial

10   transaction, is different.  I therefore am only going to

11   provide additional instructions on that element.

12             With respect to the fourth element of the money

13   laundering crime charged in Count Nine, the government must

14   prove beyond a reasonable doubt that the defendant you are

15   considering acted with knowledge that the transaction was

16   designed to conceal or disguise the nature, location, source,

17   ownership or control of the proceeds of the specified unlawful

18   activity, namely, wire fraud.  The terms I have just used have

19   their everyday meaning.

20             If you find that the evidence establishes beyond a

21   reasonable doubt that the defendant you are considering knew of

22   the purpose of the transaction in issue, and that he or she

23   knew that the transaction was either designed to conceal or

24   disguise the true origin of the property in question, then this

25   element is satisfied.

1          However, if you find that the defendant knew of the

2    transaction but did not know that it was either designed to

3    conceal or disguise the true origin of the property in

4    question, you must find that this element has not been

5    satisfied and find the defendant not guilty on this count.

6          Proof that the defendant knew the purpose of the

7    financial transaction was to conceal or disguise the location

8    or ownership of the proceeds of specified unlawful activity may

9    be established by proof that the defendant actually knew, or

10   knew because of circumstantial evidence.  In other words, you

11   are entitled to find from the circumstances surrounding the

12   financial transaction what the purpose of the activity was and

13   that the defendant knew of that purpose.

14         Counts Eight and Nine of the indictment also charge

15   the defendants with aiding and abetting money laundering crimes

16   charged in those counts.  I have previously instructed you on

17   the law of aiding and abetting, and you should apply those

18   instructions here.

19         Ladies and gentlemen, let's stand up and stretch, with

20   a deep breath.

21         I now turn to the last counts, Counts Ten through

22   Fourteen of the indictment that charge both defendants with

23   violating a provision of federal law known as the Truth in

24   Lending Act, often called "TILA."  TILA requires a creditor to

25   make certain disclosures to consumers at the outset of a

HAD8TUC2                          Charge

1    transaction, and those disclosures must accurately reflect the

2    terms of the legal obligations agreed upon by the parties.

3          To find the defendant you are considering guilty of

4    this crime, you must find that the government proved beyond a

5    reasonable doubt that the defendant you are considering

6    willfully and knowingly gave false and inaccurate information

7    under the Truth in Lending Act.

8          I will discuss each concept in turn.  The terms

9    "willfully" and "knowingly" have the same meaning I have

10   previously explained to you.  The terms "false" and

11   "inaccurate" have their everyday meaning.

12         In this case, the government has alleged that the

13   defendants materially understated the true cost of the loans

14   extended by the Tucker Payday Lenders by disclosing false and

15   inaccurate information with respect to the finance charges and

16   total payments due under loans extended by the Tucker Payday

17   Lenders.  I instruct you as a matter of law that finance

18   charges and total payments due under a loan are disclosures

19   required under the Truth in Lending Act (TILA).  Whether the

20   disclosures were false or inaccurate, however, is a

21   determination you must make.

22         In order to find the defendant you are considering

23   guilty in this matter, you must also determine that the false

24   or inaccurate disclosures were material, meaning that the

25   degree of falsehood or inaccuracy was such that it would be

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

material to a borrower.  I previously explained the meaning of

"material," and you should apply those instructions here.

So that completes the 14 counts.  You will go through

the verdict sheet in the order in which the questions are

presented.  And, basically, it has each of the 14 counts

listed, and then under each of them, the name of each of the

defendants and a spot for you to check guilty or not guilty.

That's what the verdict sheet consists of.

Once you complete the verdict sheet as to questions 1

through 14, there is an additional question.  If, but only if,

you have found any defendant guilty on any of the Counts Two

through Four, you should respond to the following question on

the verdict form:  "Has the government proven beyond a

reasonable doubt that, at the time of collection of any of the

loans you found as the basis for a guilty verdict on Counts Two

through Four, the lender, in fact, was defendant Scott Tucker

or an entity owned or controlled by him?"  You are to answer

that question "Yes" or "No."

For the purposes of this question, and solely on the

issue of control, you should consider the following factors on

the issue of control:  whether Mr. Tucker was the source of

funds for the loans, whether he bore the risk of non-repayment

of the loans, and whether he had the power to direct the

activities of the entity, including day-to-day operations,

finances, lending decisions, distribution of profits, hiring

HAD8TUC2                         Charge

1    and termination of employees, advertising and solicitation of

2    customers, and banking and other third-party relationships.

3           Venue.  With respect to any count you are considering,

4    the government, in addition to proving the essential elements

5    of that charge, must also prove that at least one act in

6    furtherance of the charge occurred in the Southern District of

7    New York.  This is called establishing venue.  The Southern

8    District of New York includes all of Manhattan and the Bronx,

9    as well as Westchester, Rockland, Orange, Putnam, Dutchess and

10   Sullivan Counties.

11          With respect to Counts One through Six and Counts Ten

12   through Fourteen, this means that, with regard to each count,

13   you must decide whether the crime charged in a particular

14   count, or any act committed to further or promote the crime,

15   occurred within the Southern District of New York.

16          With respect to money laundering counts charged in

17   Counts Eight and Nine, venue is proper here in the Southern

18   District of New York if you find that a financial or monetary

19   transaction was conducted here, or if you find that the wire

20   fraud charged in Count Six, or any act committed to further or

21   promote the wire fraud charged in Count Six, occurred here, if

22   the defendant participated in the transfer of the proceeds of

23   the wire fraud from the Southern District of New York to where

24   the financial or monetary transaction was conducted.

25          With respect to the conspiracy to commit money

1    laundering charged in Count Seven, venue is proper here in the

2    Southern District of New York if you find that venue is proper

3    here for either Counts Eight or Nine, or if an act in

4    furtherance of the conspiracy took place here.

5            Unlike the elements of the offenses which must be

6    proven beyond a reasonable doubt, the government is only

7    required to prove venue by a preponderance of the evidence.  A

8    preponderance of the evidence means that it is more probable

9    than not that some act in furtherance of the crime you are

10   considering occurred in this district.

11           A few concluding remarks.

12           The possible punishment of a defendant in the event of

13   a conviction is not a proper consideration for the jury and

14   should not, in any way, enter into or influence your

15   deliberations.  The duty of imposing sentence belongs to the

16   Court and the Court alone.  Your function is to weigh the

17   evidence and to determine whether the defendant is or is not

18   guilty upon the basis of evidence and the law.

19           Therefore, I instruct you not to consider possible

20   punishment or punishment in any way in your deliberations.

21           You are about to go into the jury room to begin your

22   deliberations.  I will have exhibits actually received into

23   evidence go into the jury room with you.  They will come in in

24   a few minutes.

25           With regard to the recordings, if you want to hear the

1    recordings, we will have you come into the courtroom to play

2    them.

3              If you want any testimony read back, please send out a

4    note specifying what you want to hear and we will arrange

5    either to have it read back in the courtroom or brought in to

6    you.  Please be as specific as possible in requesting portions

7    of testimony.  If you want any further explanation of the law

8    as I have explained it to you, you may also request that.

9              Your requests for testimony -- in fact, any

10   communication with the Court -- should be made in writing,

11   signed by your foreperson, and given to the deputy marshal.  In

12   any event, do not tell me or anyone else how the jury stands on

13   any issue.  In other words, do not tell me or anyone else what

14   the vote is until after a unanimous verdict is reached.

15             As I said, I am going to send in two copies of the

16   indictment.  That's only an accusation and it's not proof of

17   anything.  But you will have a copy of the indictment, you will

18   have two copies of these jury instructions, and everyone will

19   have a copy of the verdict sheet, although only one is signed

20   and returned.

21             Some of you have taken notes during the trial.  I want

22   to emphasize that notes are simply an aid to memory.  Notes

23   that any of you have made may not be given any greater weight

24   or influence in determining the case than the recollections or

25   impressions of other jurors, whether from notes or memory, with

HAD8TUC2                    Charge

1    respect to the evidence presented or what conclusions, if any,

2    should be drawn from the evidence.  Any difference between a

3    juror's recollection and another juror's notes should be

4    settled by asking to have the court reporter read back the

5    transcript, for it is the court record rather than any juror's

6    notes upon which the jury must base its determination of the

7    facts and its verdict.

8            As I said, you will get the verdict form to record

9    your verdicts.  You should proceed through the questions on the

10   verdict form in the order in which they are presented.

11           It is your duty as jurors to consult with one another

12   and to deliberate with a view to reaching an agreement.  Each

13   of you must decide the case for himself or herself, but you

14   should do so only after a consideration of the case with your

15   fellow jurors, and you should not hesitate to change an opinion

16   when convinced that it is erroneous.  Your verdict must be

17   unanimous, but you are not bound to surrender your honest

18   convictions concerning the effect or weight of the evidence for

19   the mere purpose of returning a verdict solely because of the

20   opinion of other jurors.  Discuss and weigh your respective

21   opinions dispassionately, without regard to sympathy, without

22   regard to prejudice or favor for either party, and adopt that

23   conclusion that in your good conscience appears to be in

24   accordance with the evidence and the law.

25           Please remember, you are not partisans.  You are

HAD8TUC2                         Charge

1    judges -- judges of the facts -- not representatives of a

2    constituency or a cause.

3         Again, each of you must make your own decision about

4    the proper outcome of the case based on your consideration of

5    the evidence and your discussions with your fellow jurors.  No

6    juror should surrender his or her conscientious beliefs solely

7    for the purpose of returning a unanimous verdict.  If at any

8    point you find yourselves divided, do not inform the Court or

9    anyone of how the jurors are split.  Once you have reached a

10   verdict, do not announce what the verdict is until I ask you to

11   do so in the courtroom.

12        Once you get into the jury room, you may select a

13   foreperson who will be responsible for signing all

14   communications to the Court on behalf of the jury and for

15   handing them to the deputy marshal during your deliberations.

16   This should not be understood to mean that an individual cannot

17   send the Court a note should the foreperson refuse to do so.

18        I will give you the typed text of these instructions,

19   as I said, but it's possible that there is a slight variance

20   between the words I have spoken and the typed text that I will

21   give you.  It is the words I have spoken that control if you

22   find any variance.

23        After you have reached a verdict, your foreperson will

24   advise the deputy marshal outside your door that you have

25   reached a verdict.

1       I will stress that each of you must be in agreement

2   with the verdict that is announced in court.  Once your verdict

3   is announced by your foreperson in open court and officially

4   recorded, it cannot ordinarily be revoked.

5       Your function now is to weigh the evidence in this

6   case and to determine whether the government has or has not

7   proven the guilt of defendants Scott Tucker and Timothy Muir

8   beyond a reasonable doubt with respect to each of the 14 counts

9   in the indictment.

10       You must base your verdict solely on the evidence or

11   lack of evidence in this case and these instructions as to the

12   law, and you are obligated under your oath as jurors to follow

13   the law as I have instructed it, whether you agree or disagree

14   with the particular law in question.  I am sure that if you

15   listen to the views of your fellow jurors and if you apply your

16   own common sense, you will reach a verdict in accordance with

17   the evidence and the law.

18       Finally, let me state that your oath sums up your

19   duty, and that is, without fear or favor to anyone, you will

20   well and truly try the issues, based solely upon the evidence

21   and this Court's instructions as to the law.

22       Ladies and gentlemen, this concludes my instructions.

23   You may stand up and stretch while I meet with the lawyers at

24   the sidebar, and please do not discuss the case until you're

25   inside the jury room.

```
 1              (At the sidebar)

 2              THE COURT:  From the government.

 3              MR. SCOTTEN:  Nothing, your Honor.

 4              THE COURT:  From Mr. Tucker.

 5              MR. GINSBERG:  Nothing, your Honor.

 6              THE COURT:  From Mr. Muir.

 7              MR. BATH:  No, sir.

 8              THE COURT:  What I am going to do is instruct the

 9     alternates that they are still on jury duty.  They cannot

10     discuss the case among themselves or with anyone, follow my

11     instructions.  They are subject to recall.

12              All right.  That's about it.

13              You can return to your seats.

14              (In open court)

15              THE COURT:  Ladies and gentlemen, I should tell you

16     that during deliberations, if someone steps out of the room for

17     any reason, you cannot deliberate unless all the jurors are

18     present.  So, for example, if you decide to take a few minutes

19     to step out of the jury room, then you suspend your

20     deliberations, unless and until everyone is present.

21              If the jury has not reached a verdict, I will call you

22     back in around five minutes to 5 tonight.  All right.

23              At this point, with regard to Cecilia Rosa, Nuria

24     Cornielle, and Glenn Stockton, you are not excused from this

25     jury as of yet.  It is possible under the law that you could be
```

HAD8TUC2

1    called back to participate in deliberations.  So for that

2    reason, until this jury has reached a verdict, you are still on

3    jury duty and subject to recall.  You still must follow the

4    instructions that I have given you about not discussing the

5    case among yourselves or with anyone, not doing any research,

6    not doing any investigation, because you may be recalled.  I

7    will promise you, however, that when and if the jury reaches a

8    verdict, Flo, my deputy, will give you a call at the phone

9    number that you have given her to let you know what the verdict

10   is, and also to let you know that you are relieved of this

11   obligation not to discuss the case.

12            So with great admiration to you for your hard service,

13   your being here, your paying attention, being good-spirited and

14   good-natured, I am going to allow you at this point to return

15   to the jury room to gather your belongings and to depart.

16            So, again, your service is most admirable.  You should

17   be proud of what you have done, and you have my appreciation

18   and my admiration.  Thank you.

19            Please leave your notebooks in the jury room.

20            (Alternate jurors exit courtroom)

21            THE COURT:  I ask the deputy marshal to step forward

22   to take the oath.

23            Please come into the well.

24            (Marshal sworn)

25            THE COURT:  Ladies and gentlemen, you may now discuss

HAD8TUC2

1    the case among yourselves.

2              Thank you.

3              (At 11:07 a.m., the jury retired to deliberate)

4              THE COURT:  Please be seated.

5              Let me begin by saying that this case was actually a

6    pleasure to preside over because it was so well presented by

7    the lawyers on both sides.  The openings and closings, the

8    directs, the crosses, were a pleasure to watch, and I saw some

9    very fine lawyering in this courtroom, which is always

10   especially enjoyable.  And I realize that this case, like many

11   trials, but probably more so than most trials, what goes on in

12   the courtroom is the tip of the iceberg, because of the number

13   of charges, the number of documents, etc., the amount of

14   preparation on both sides was extraordinary.  You have worked

15   long and hard on this case, over a considerable period of time,

16   and you have my eternal respect.

17             Each of the lawyers in this case, Mr. Scotten, Mr.

18   Velamoor, Mr. Ravi, Mr. Ginsberg, Mr. Roth, Mr. Bath, and their

19   colleagues and associates, are all welcome in this courtroom in

20   the future.  I thought everyone conducted themselves consistent

21   with the highest aspirations of this profession.  I really do.

22   And in a long trial it's possible that things can get difficult

23   or tense at times, but I thought everybody acted in a

24   professional manner.  And my thanks and respect also go to Ms.

25   Limani, also for her hard work in this case.

3332

HAD8TUC2

1            I make no apologies for being the traffic cop in this

2     case.  That's what I get a paycheck for doing.  That's what my

3     job is.  We all have a role.  My role is not to be your best

4     friend.  My role is to do what I need to do, and I make no

5     apologies for it, but I just assure you that if anybody at any

6     time ever had a wounded ego or bruised feelings, you shouldn't.

7     It's just part of what a trial judge needs to do to keep a case

8     moving because, as you know, I am obsessed with the people in

9     the jury box.  I am obsessed with not having their time wasted

10    and that the case goes in in a reasonably smooth fashion

11    without imposing on their time.

12            Now, let me turn to a couple of housekeeping things.

13    I subscribe to what I call an eight-minute rule, which is you

14    have to be able to get back to this courtroom within eight

15    minutes.  That means if you're a prosecutor, you can't go back

16    to your office, or a defense counsel.  There isn't going to be

17    enough time to get back here in eight minutes.  You have to

18    make sure that you're in contact with Flo, and there should be

19    someone from each team who is in the courtroom or extremely

20    nearby.  So if we get a note, I am going to have it shown to

21    you and I am going to get you working on the note.

22            If it's a readback, what you are going to do is you

23    are going to go through the transcript and you are going to

24    figure out what you think is appropriate, see whether you can

25    agree on it, and then we will have the court reporters prepare

HAD8TUC2

1    a redacted transcript, and by redacted, there is colloquy at

2    the sidebar that comes out, if there is an objection sustained,

3    the question and answer will come out, that sort of thing.  And

4    then I will come down, supervise the process, and we will send

5    the transcript into the jury room.

6            I am going to require that both sides confer right now

7    on the received exhibits, and you are going to tender them to

8    my deputy, who is going to tender them to the deputy marshal to

9    be brought into the jury room.  And you heard what I said about

10   the recordings, how we will deal with that.

11           Thank you all very much.

12           MR. SCOTTEN:  Thank you, your Honor.

13           MS. LIMANI:  Thank you, your Honor.

14           (Recess pending verdict)

15           (Jury not present)

16           THE COURT:  So I have two notes from the jury, which

17   have been shared with counsel.

18           Court Exhibit 22:  "Judge, can we get Tim Muir's

19   transcript, please, October 11, during cross-examination, when

20   he stated that he knew that the interest rates were too high."

21           Note number 23:  "Can we have the transcripts for the

22   recordings, please."

23           I gather the parties have clipped pages 2901 through

24   2903, is that correct?

25           MR. VELAMOOR:  Judge, I think both parties agree that

HAD8TUC2

1      the jury should be provided with testimony beginning on

2      2901:12.  So line 12 on page 2901.  There is a disagreement as

3      to the end point.

4               THE COURT:  What is the position of the government?

5               MR. VELAMOOR:  Our position is that the jury should be

6      read back 2901, line 12, through 2902, line 16.

7               THE COURT:  And what is the position of the

8      defendants?

9               MR. BATH:  We believe it should end at 2903, line 9.

10              THE COURT:  Just give me a moment, please.

11              Starting point on 2901 again, which line?

12              MR. VELAMOOR:  Line 12.

13              THE COURT:  You want to end it where, Mr. Bath?

14              MR. BATH:  2903, line 9.

15              THE COURT:  And the government wants to end it at?

16              MR. VELAMOOR:  2902:16.

17              THE COURT:  I am going to agree with Mr. Bath.

18              Ordinarily, my preference would be to send this into

19     the jury room.  I am going to have the court reporter read it,

20     2901, line 12, through 2903, line 9.

21              MR. VELAMOOR:  We ask, if the Court is inclined to

22     include more, we would ask that it at least go through 2903:21

23     to complete that exchange.

24              First of all, we are disagreeing with Mr. Muir over

25     the question and whether or not the exchange continues.

HAD8TUC2

1        And finally, it resolves with him acknowledging the

2    New York attorney general's position.

3        THE COURT:  Through what, line 21?

4        MR. VELAMOOR:  Which was ultimately the question.

5        THE COURT:  I think that's right.  If I am going to

6    include down to line 9, then I think it's fair to include down

7    to line 21.

8        Any objection, Mr. Bath?

9        MR. BATH:  I am reviewing that right now.

10        I disagree with that position, Judge.

11        THE COURT:  In other words, you want the jury to know

12    what Mr. Muir's position was, but not the position of the

13    statutory officer enforcing the New York statute.

14        MR. BATH:  I don't read it that way.  The question

15    posed about New York was that was the position in New York.  I

16    guess you can read that to be the AG's position or it could be

17    the position of New York under the law.  I am reading it as

18    it's the New York law, not the AG.  When the government

19    transitions to the AG, that's a different topic.  That's my

20    analysis.

21        THE COURT:  Here's the thing.  I think it's a close

22    question.  The government may be right that the readback should

23    end at 2902:16.  But if I am going to go through 2903:9, the

24    Court says to Mr. Muir, "That was certainly the position of New

25    York, right?  And you can say yes, it was, no it wasn't, but

HAD8TUC2

1   you can't disagree with the question."  And he says, "Then I

2   say no, it wasn't."  And apparently he acknowledged later on

3   that he knew that it was the position of the attorney general

4   of New York, that it was their position.

5          MR. BATH:  I understand that, Judge.  If I could have

6   just second one.

7          THE COURT:  Sure.

8          MR. BATH:  We will take it all, then.

9          THE COURT:  That's fine.

10          MR. BATH:  Could I also make an additional request?  I

11   would ask then that Mr. Muir's questioning by me on redirect,

12   in response to cross-examination, also be read back to the

13   jury.

14          THE COURT:  I am going to decline to do that because

15   the jury was very specific about what they wanted.  If they had

16   said, I want the testimony on a particular subject, I would

17   have given them the direct, the cross and the redirect, but

18   that's not what they asked for.  So thank you.

19          Bring our jury in, please.

20          MR. VELAMOOR:  There is a second note I believe.

21          THE COURT:  The second note, Court Exhibit 23, "Can we

22   have the transcripts for the recordings, please."

23          Any objection?

24          MR. VELAMOOR:  I believe there is, not from us, but

25   there is an objection from defense.

HAD8TUC2

 1              MR. GINSBERG:  The transcripts are not in evidence.

 2    That's the problem.

 3              THE COURT:  They are an aid to recollection.  I will

 4    remind them that it is the recordings that are the evidence.

 5    The transcripts are an aid to listening to the tapes and if

 6    they want to listen to the tapes, they can.

 7              However, this jury has listened to the tapes, with the

 8    transcript in front of them as an aid to listening, and if this

 9    is what they want, so long as they understand the limitation of

10    the transcript, it seems appropriate.

11              THE COURT:  OK.  Bring our jurors in, please.

12              (Jury present; time noted:  2:28 p.m.)

13              THE COURT:  Good afternoon.

14              Could the foreperson please raise their hand.

15              Excellent.

16              I have the two notes.  I am going to ask you going

17    forward, remember to sign the note for us.  Thank you.

18              So with regard to the first note, "Judge, can we get

19    Tim Muir's transcript, please, October 11, during

20    cross-examination, when he stated that he knew that the

21    interest rates were too high."

22              I am going to ask our court reporter to please read

23    back that portion of the cross-examination.

24              (Record read)

25              THE COURT:  There is a second note which reads, "Can

1    we have the transcripts for the recordings, please."

2            Now, ladies and gentlemen, as you remember, I know you

3    know this, the recordings themselves are the evidence, the

4    transcripts are an aid to listening to the tapes.  I will allow

5    you to take the transcripts back to the jury room with you, as

6    long as you understand that instruction, and it's your

7    recollection of what you heard on the tapes that controls.

8            All right.  With that, thank you, ladies and

9    gentlemen.

10           (Jury resumes deliberations; time noted:  2:35 p.m.)

11           THE COURT:  Thank you.

12           MR. VELAMOOR:  Judge, it looks like some of them took

13   their binders, some didn't.  Should we just leave it at their

14   choice?

15           THE COURT:  Absolutely.

16           So the record is clear, the binders have remained at

17   the jurors' seats in the courtroom since they were first made

18   available to the jurors quite some time ago.  And just now,

19   after my instruction, a couple of jurors took binders back with

20   them.  It looks like, I can't see for sure, but several jurors,

21   I see at least three, who did not.  There may have been more

22   than that.  I just may not be able to see the angles.  So be

23   it.

24           (Recess pending verdict)

25           THE COURT:  The note has been shown to counsel, I am

HAD8TUC2

1    advised.  It's been marked as Court Exhibit 24.

2            "Hello, Judge.  Can you give further clarification on

3    what collection of unlawful debt means?"  Collection of

4    unlawful debt is in quotes.  "Still unclear to us."

5            "Also, can you provide more clarification on elements

6    four and five of Counts Two."  It says "Counts Two," and then

7    it says "(2-4)."  So I think they are talking about elements

8    four and five of Counts Two through Four, is the way I

9    interpret it.

10           So let me hear what the government has to say, and

11   then I will hear what the defendants have to say.

12           MR. SCOTTEN:  Your Honor, I think we are broadly in

13   agreement that, given that the jury's request is not that

14   specific yet, the Court should reread its instructions in these

15   areas.

16           I think we are also agreed that for elements four and

17   five of Counts Two through Four, the Court should reread those

18   elements in their entirety, which are on pages 33 through 35,

19   and they are clearly labeled in the Court's instructions as

20   those elements.

21           With respect to unlawful debt, there is no definition

22   we are aware of given for "collection of."  But the Court

23   defines unlawful debt, which we at least imagine is the

24   contentious part, pretty thoroughly.

25           The parties are also agreed that that definition

3340

HAD8TUC2

1    begins on page 29 of the Court's instructions, at the bottom of

2    the page, in the last paragraph, beginning with the second

3    sentence of that paragraph, "For purposes of this case, an

4    unlawful debt," and then the Court goes on.

5          The government would ask the Court to read what we

6    think is the entirety of its definition, since the jury's

7    question is pretty vague and general, that we believe runs to

8    page 31, ending at the end of sort of the first paragraph that

9    carries over.  So ending "to make such loans, not continuing on

10   where it says "the focus of this sixth element."

11         THE COURT:  Let me understand your position.  Let's

12   see now.

13         Let me hear the defendants' position.

14         MR. GINSBERG:  We agree with the government on the

15   first issue, your Honor, elements four and five.

16         THE COURT:  That I should read the entire instruction

17   on four and five again, is that what you mean by that?

18         MR. GINSBERG:  Yes.

19         THE COURT:  All right.

20         MR. GINSBERG:  On the second question, we believe

21   that --

22         THE COURT:  The second question is elements four and

23   five on Counts Two through Four.

24         So the first question, go ahead.

25         MR. GINSBERG:  The first question, we believe that

HAD8TUC2

```
1    your Honor should read the last paragraph on page 29, starting

2    where it says, "For purposes of this case, an unlawful debt,"

3    and end at the top of page 30, where it says "under state law."

4    We think the rest of it is not what the jury is asking, the

5    specific rates in each state.

6              THE COURT:  Let me hear from Mr. Bath.

7              MR. BATH:  Not being familiar with your Honor's

8    procedure, I don't why the Court couldn't maybe just refer them

9    to those pages.  They can read.  We have given these

10   instructions.  I understand that they are asking for more

11   clarification.  I'm not sure just reading it again to them

12   versus just telling them they can read whatever pages, or just

13   refer them back generally to the instructions, I don't know

14   that we are clarifying it.  Maybe that makes us feel like we

15   are answering their question, but I'm not sure we are.  I would

16   just ask that you tell them they have got the instructions, and

17   refer them back to the instructions they have.

18             THE COURT:  Thank you.

19             The one point where I am not in agreement with either

20   side is -- the question reads, "Can you give further

21   clarification on 'collection of unlawful debt' means.  Still

22   unclear to us."

23             I think the jury sees the world slightly different

24   than a bunch of lawyers, and maybe even a judge who has been

25   sitting here for several weeks.  I am reading something into
```

1    the word "collection" of.  That's one thing that the trial

2    evidence didn't really focus on a whole lot.

3            I think I agree with the defendants that with regard

4    to the unlawful debt portion, it's beginning on the bottom, the

5    last carry-over paragraph on 29 up to that carry-over sentence

6    at the top of 30.  That's unlawful debt.

7            I would say, lawmakers did not make the making of a

8    loan the federal crime.  The federal crime is the collection

9    of -- making an unlawful debt the federal crime.  The federal

10   crime is the collection of the unlawful debt.  And then say,

11   unlawful debt is as defined here, and I am kind of indifferent

12   whether I read them the instructions again or I hand it to

13   them.  But I think that the question calls for focus on the

14   word "collection," which is to be given its ordinary and

15   customary meaning.  It's not a term of art.

16           The point being the making of a loan is not the crime,

17   as Congress and lawmakers have framed this statute, it is the

18   collection of the unlawful debt.  That's the way I read the

19   plain language of the statute, and I think -- I may be wrong, I

20   may be overreading the question, but I don't want to under-read

21   it and I don't want to overread it.  So that's what I propose

22   to say.

23           Any objection from the government?

24           MR. SCOTTEN:  We agree with the Court's reading.  We

25   are just being very cautious to expand, but no objection.

HAD8TUC2

```
1              THE COURT:  Mr. Ginsberg.
2              MR. GINSBERG:  We would stand on our previous
3    position, your Honor.
4              THE COURT:  Mr. Bath.
5              MR. BATH:  We have no objection.
6              THE COURT:  So bring our jury in, please.
7              The pages, again, on the fourth and fifth element are
8    where?
9              MR. SCOTTEN:  33 to 35, your Honor.
10             THE COURT:  Thank you.
11             (Jury present; time noted:  3:20 p.m.)
12             THE COURT:  Thank you, ladies and gentlemen.
13             So I have the note which reads, "Hello, Judge."  And I
14   say, hello, jury.
15             "Can you give further clarification on what
16   'collection of unlawful debt' means?  Still unclear to us."
17             Let me turn to that portion before I turn to the
18   second question on there.
19             Congress and lawmakers made it a crime and made it
20   unlawful for any person, through collection of an unlawful
21   debt, through an enterprise engaged in or the activities of
22   which affect interstate commerce.
23             Actually, I am saying that incorrectly.  Let me start
24   from the beginning because what I just said to you is wrong,
25   and I want to make sure I get it right.
```

HAD8TUC2

1          So the law is that it shall be unlawful for any

2    person, employed by or associated with any enterprise, engaged

3    in or the activities of which affect interstate or foreign

4    commerce, to conduct or participate, directly or indirectly, in

5    the conduct of such an enterprise through the collection of

6    unlawful debt.

7          So you notice that the way that reads, it's not the

8    making of the loan that is the crime; it's the collection of

9    the unlawful debt.

10         Now, what is an unlawful debt?  It's defined on the

11   bottom of page 29 and up to the top of page 30 of the

12   instructions.

13         For the purposes of this case, an unlawful debt means

14   a debt that is unenforceable under state law because of the

15   laws relating to usury -- and I explained what usury is

16   elsewhere -- and which was incurred in connection with the

17   business of lending money at a rate usurious under state law,

18   where the usurious rate is at least twice the enforceable rate

19   under state law.

20         Now, you look at the instructions, there is an example

21   given, that may or may not be useful to you, but that's the

22   definition of unlawful debt.  And it's the collection of an

23   unlawful debt which is rendered unlawful, when the other

24   elements of the crime are met.  By just focusing on that

25   element, I don't want you to ignore the other elements that I

HAD8TUC2

1    charged you on for Count One and for Counts Two through Four.

2           Now, the second part of your question is, "Can you

3    provide more clarification on elements four and five of Counts

4    Two" -- I read this to mean Counts Two through Four.

5           So the fourth element the government must prove with

6    respect to Counts Two through Four is that the defendant

7    willfully and knowingly engaged in the collection of an

8    unlawful debt.  Willfully, knowing and unlawfully have the same

9    meaning on which I have instructed you previously.

10          For each of Counts Two, Three and Four, the indictment

11   alleges five specific unlawful debts that the defendants are

12   alleged to have engaged in collecting.  The government does not

13   need to prove the existence of two or more collections of

14   unlawful debt forming a pattern.  Rather, each individual

15   instance of collection of an unlawful debt is a separate

16   substantive crime.

17          So on each of the counts, you have to unanimously

18   agree that there was at least -- these are the substantive

19   counts -- that there was at least one unlawful debt that the

20   defendant who you are considering willfully and knowingly

21   engaged in the collection of.  And you must unanimously agree

22   that the government has proven beyond a reasonable doubt that

23   the defendant engaged in collecting at least one particular

24   debt named in a count before you may convict the defendant of

25   that count.  In other words, it's not good enough if half of

HAD8TUC2

1    you think it was this particular debt and the other half of you

2    think it was a different debt.  You all have to agree on at

3    least one unlawful debt and the collection of one unlawful debt

4    under that count.

5         The fifth element the government must prove with

6    respect to Counts Two through Four is that the defendant

7    conducted or participated in the conduct of the affairs of the

8    Tucker payday lending organization, directly or indirectly,

9    through the collection of unlawful debt.

10        It is not enough that there be an enterprise and that

11   the defendant engaged in the collection of unlawful debt.  More

12   is required.  There must be a meaningful connection between the

13   defendant engaging in the collection of unlawful debt and the

14   affairs of the enterprise.  The defendant must have conducted

15   or participated in the enterprise by collecting or aiding in

16   the collection of unlawful debt.  It is not necessary, however,

17   that the collection of unlawful debt directly further the

18   enterprise's activities.  It is enough that the defendant's

19   collection of unlawful debt was related to the enterprise's

20   activities.

21        The fifth element also requires that the defendant

22   have some role in the operation, direction or management of the

23   enterprise.  To conduct or participate in the conduct of the

24   enterprise means the defendant must have played some part in

25   the operation or management of the enterprise.  The government

HAD8TUC2

```
1    is not required to prove that the defendant was a member of

2    upper management, and an enterprise is operated not only by

3    those in upper management, but also those lower down in the

4    enterprise who act under the direction of upper management.  It

5    is sufficient if you find that the defendant provided

6    substantial assistance to those who conducted the enterprise,

7    and thereby was involved in playing a part in the direction of

8    the affairs of the enterprise through collection of unlawful

9    debt.

10              Thank you, ladies and gentlemen.  You may return.

11              (Jury resumes deliberations; time noted:  3:30 p.m.)

12              THE COURT:  Anything further?

13              MR. SCOTTEN:  No, your Honor.

14              THE COURT:  We are adjourned.  Thank you.

15              (Recess pending verdict)

16              THE COURT:  I have an envelope that I understand came

17   in at 4:10 p.m., and I have been advised that it's the jury's

18   verdict.

19              Please bring our jury in.

20              (Jury present; time noted:  4:22 p.m.)

21              THE COURT:  Madam foreperson, I have an envelope here.

22   Does this contain the jury's verdict?

23              THE FOREPERSON:  It does.

24              THE COURT:  Is it signed and dated by you?

25              THE FOREPERSON:  Yes.
```

HAD8TUC2

1          THE COURT:  Is the verdict unanimous?

2          THE FOREPERSON:  Yes.

3          THE COURT:  All right.

4          Madam Deputy, if you will return this to the

5    foreperson and take the jury's verdict.

6          If you'd please stand.

7          THE DEPUTY CLERK:  As to Count One:  Conspiracy to

8    collect unlawful debts.

9          As to Scott Tucker, guilty or not guilty?

10          THE FOREPERSON:  Guilty.

11          THE DEPUTY CLERK:  Timothy Muir, guilty or not guilty?

12          THE FOREPERSON:  Guilty.

13          THE COURT:  Count Two:  Collection of unlawful debts

14    (Ameriloan, United Cash Loans and US FastCash).

15          As to Scott Tucker.

16          THE FOREPERSON:  Guilty.

17          THE DEPUTY CLERK:  As to Timothy Muir.

18          THE FOREPERSON:  Guilty.

19          THE DEPUTY CLERK:  Count Three:  Collection of

20    unlawful debts (500 FastCash).

21          As to Scott Tucker.

22          THE FOREPERSON:  Guilty.

23          THE DEPUTY CLERK:  Timothy Muir.

24          THE FOREPERSON:  Guilty.

25          THE DEPUTY CLERK:  Count Four:  Collection of unlawful

HAD8TUC2

1    debts (One Click Cash).

2              As to Scott Tucker.

3              THE FOREPERSON:  Guilty.

4              THE DEPUTY CLERK:  Timothy Muir.

5              THE FOREPERSON:  Guilty.

6              THE DEPUTY CLERK:  Count Five:  Conspiracy to commit

7    wire fraud.

8              As to Scott Tucker.

9              THE FOREPERSON:  Guilty.

10             THE DEPUTY CLERK:  As to Timothy Muir.

11             THE FOREPERSON:  Guilty.

12             THE DEPUTY CLERK:  Count Six:  Wire fraud.

13             As to Scott Tucker.

14             THE FOREPERSON:  Guilty.

15             THE DEPUTY CLERK:  Timothy Muir.

16             THE FOREPERSON:  Guilty.

17             THE DEPUTY CLERK:  Count Seven:  Money laundering

18   conspiracy.

19             As to Scott Tucker.

20             THE FOREPERSON:  Guilty.

21             THE DEPUTY CLERK:  Timothy Muir.

22             THE FOREPERSON:  Guilty.

23             THE DEPUTY CLERK:  Count Eight:  Promotion money

24   laundering.

25             As to Scott Tucker.

HAD8TUC2

1            THE FOREPERSON:  Guilty.

2            THE DEPUTY CLERK:  Timothy Muir.

3            THE FOREPERSON:  Guilty.

4            THE DEPUTY CLERK:  Count Nine:  Concealment money

5    laundering.

6            Scott Tucker.

7            THE FOREPERSON:  Guilty.

8            THE DEPUTY CLERK:  Timothy Muir.

9            THE FOREPERSON:  Guilty.

10           THE DEPUTY CLERK:  Count Ten:  False Truth in Lending

11   Act disclosures (Ameriloan).

12           Scott Tucker.

13           THE FOREPERSON:  Guilty.

14           THE DEPUTY CLERK:  Timothy Muir.

15           THE FOREPERSON:  Guilty.

16           THE DEPUTY CLERK:  Count Eleven:  False Truth in

17   Lending Act disclosures (United Cash Loans).

18           Scott Tucker.

19           THE FOREPERSON:  Guilty.

20           THE DEPUTY CLERK:  Timothy Muir.

21           THE FOREPERSON:  Guilty.

22           THE DEPUTY CLERK:  Count Twelve:  False Truth in

23   Lending Act disclosures (US FastCash).

24           Scott Tucker.

25           THE FOREPERSON:  Guilty.

HAD8TUC2

1          THE DEPUTY CLERK:  Timothy Muir.

2          THE FOREPERSON:  Guilty.

3          THE DEPUTY CLERK:  Count Thirteen:  False Truth in

4    Lending Act disclosures (500 FastCash).

5          Scott Tucker.

6          THE FOREPERSON:  Guilty.

7          THE DEPUTY CLERK:  Timothy Muir.

8          THE FOREPERSON:  Guilty.

9          THE DEPUTY CLERK:  Count Fourteen:  False Truth in

10   Lending Act disclosure (One Click Cash).

11         Scott Tucker.

12         THE FOREPERSON:  Guilty.

13         THE DEPUTY CLERK:  Timothy Muir.

14         THE FOREPERSON:  Guilty.

15         THE DEPUTY CLERK:  Has the government proven beyond a

16   reasonable doubt that, at the time of collection of any of the

17   loans you found as the basis for a guilty verdict on Counts Two

18   through Four, the lender, in fact, was defendant Scott Tucker

19   or an entirety owned or controlled by him?

20         Yes or no.

21         THE FOREPERSON:  Yes.

22         THE COURT:  All right.  Thank you, Madam Foreperson.

23         Madam Deputy, if you would please poll the jury.

24         (Jury polled; each juror answered in the affirmative)

25         THE DEPUTY CLERK:  The jury has been polled.

HAD8TUC2

1            THE COURT:  Any objection to my discharging the jury?

2            MR. VELAMOOR:  No, your Honor.

3            MR. GINSBERG:  No, your Honor.

4            MR. BATH:  No, sir.

5            THE COURT:  Ladies and gentlemen, there was a judge

6       who sat on this court from 1950 to 1988.  His name was Edward

7       Weinfeld, and he had a very peculiar custom.  At the end of a

8       jury trial, he would say to the jurors, "I will not thank you."

9       Everybody thought this was odd till he went on to speak.

10      Because to thank you is to cheapen what you have done.  You

11      have come here as citizens of the United States.  You were

12      called upon to serve, and you came and you served, and your

13      service was long and it was hard.

14            You are people who quite possibly would never have met

15      one another had you not been called to sit on this jury.  You

16      came.  You came and you worked hard.  You came when you were

17      asked.  You arrived on time.  You got back from lunch on time.

18      You didn't complain.  You served.  This is something you can be

19      proud of for the rest of your lives.  And every word I say to

20      you I would say to you even if your verdict was very different

21      than the one you returned.  I am indifferent to what your

22      verdict is.  But I am in awe of your service, important

23      service, hard service, difficult service.  You know that, and I

24      know that.

25            It's hard not just because it's difficult sitting and

HAD8TUC2

1    listening to problems that you're not involved in, but it's

2    difficult also because it's draining on you, because you know

3    that the stakes are high for all concerned.  That's part of

4    what makes it difficult.  But you're willingness to come and

5    serve keeps our American judicial system, our jury system,

6    alive, and years from now you can look back on this with great,

7    great pride.

8            Now, we are coming into the fall holiday season.  You

9    are going to be at Thanksgiving parties and the like, and it's

10   going to come to pass that you will encounter someone who you

11   know, maybe a friend, maybe a cousin.  I don't want you to be

12   mean to anybody, but I want you to think back on your service,

13   and if this friend or cousin tells you how they plan to beat

14   their way out of jury service, I want you to think of me, I

15   want you to think of your own service, and in a very kind way

16   let them know that you don't think that's funny.  It's not any

17   funnier than somebody saying, I just cheated on my income tax,

18   or I stole, or I did something else that was wrong.

19           You see, if we didn't have juries, I want you to think

20   of how it would work in this country.  We would have men and

21   women who wear black robes deciding guilt or lack of guilt in a

22   case like this.  And no matter how fair that judge tried to be,

23   or was in fact, there would always be lingering questioning in

24   somebody's mind.  Who is that judge?  Who appointed him or her?

25   Where did they grow up?  What was their life about?  What

HAD8TUC2

1   prejudices do they hold?  But when you have a system of twelve

2   people, from all walks of life who, as I said before, never

3   would have met one another, and they come together and act as a

4   jury, they act in unison, it's as fair as we are going to get

5   in this very imperfect world that we live in.  And you have

6   been the ones who acted together, consistent with your oath.

7           So one other point.  I have told you all along, you're

8   free to talk about the case.  One piece of advice I am going to

9   give you, one comment I will make, is some jurors who have

10  served in this courthouse have decided on their own to follow a

11  rule, and the rule goes like this.  They will tell everybody

12  about what happened in the courtroom, they will tell them what

13  the outcome of the case was, they will tell them about the

14  wonderful judge who presided in the case, or the not so

15  wonderful judge who presided in the case, about the lawyers,

16  about the deputy, about the witnesses.  But the one thing they

17  won't speak about is what goes on in the jury room between

18  their fellow jurors, because that is something very personal

19  and something very private.  You can do what you want, but

20  that's a rule that you may want to consider following, keeping

21  that to yourself and your fellow jurors.

22          Now, life is strange and it may come to pass that we

23  cross paths again.  Maybe on the subway.  I don't know where it

24  will be.  But if that should come to pass, I hope you will

25  please remind me of where we first came to know one another.

HAD8TUC2

1            So, ladies and gentlemen, with the utmost of

2     admiration, you are discharged and you're free to go.  Your

3     service is complete.

4            (Jury excused)

5            THE COURT:  Any applications?

6            MR. VELAMOOR:  Yes, your Honor.  We seek remand as to

7     both defendants.

8            THE COURT:  Let me hear the basis for your

9     application.

10           MR. VELAMOOR:  The basis is as follows.

11           First of all, as the Court knows, the burden is now

12    shifted to both defendants to establish that they should remain

13    on bail.  We seek remand primarily based on a risk of flight.

14           Now, we recognize in making this application that both

15    defendants have family ties here in this country, but we think

16    this case is overcome by other factors.  Specifically, as the

17    Court knows, the crimes for which they were convicted are very

18    serious.  They carry substantial terms of incarceration.  And

19    they both have gone to trial with the expectation of being

20    found not guilty, and, therefore, this is a significant change

21    of circumstances in their minds.

22           I think it's also the case that the crimes were

23    serious in terms of the lending activities, but as the Court

24    knows from having presided over this trial, there were also

25    crimes primarily of disobedience and disregard to courts, and a

1    disregard of the ability of courts to control their activities,

2    the legitimacy of courts in stopping them from engaging in

3    activities that they thought they should be able to continue

4    doing for years.  In that capacity, they filed false affidavits

5    in courts, they made false representations to courts.  I think

6    all of that conduct bears on a greater risk of flight.

7         There are also, I think, specific factors of which we

8    would point to as to each of the defendants.

9         With respect to Mr. Tucker, in particular, we have

10   frozen all the assets that we know about, but we don't believe,

11   by any stretch of the imagination, we found all of the moneys

12   that flowed to him from this conspiracy.  So we think he has

13   access to additional financing.

14        There is an episode that we have become aware of

15   during the pendency of this case that adds to our concerns.

16   Specifically, we learned, for example, that Mr. Tucker had a

17   first-class flight from Kansas City to New York paid for by an

18   associate of his Mr. Feingold, who we understand to be someone

19   with a criminal record of his own.  That he has access to

20   financing from that individual, perhaps other individuals,

21   furthers our concerns that this defendant continues to have

22   access to money and financing that can be used to flee if he so

23   desired.

24        THE COURT:  What is his present bail conditions?

25        MR. VELAMOOR:  We will pull those up in a second.

HAD8TUC2

1            THE COURT:  That's fine.

2            Go ahead.  Talk about Mr. Muir.

3            MR. VELAMOOR:  Concerning Mr. Muir, we understand that

4    he has family here in the United States, but we also believe

5    that he is not a citizen of this country at this point.

6    Therefore, he unlike Mr. Tucker faces the risk of deportation

7    after --

8            THE COURT:  Say this again.

9            MR. VELAMOOR:  Mr. Muir we understand not to be a

10   citizen of this country, and therefore we believe faces the

11   risk of deportation, based on the crimes for which he has been

12   convicted, after completing service of any term of imprisonment

13   that the Court imposes.

14           So for those reasons, we will pull up the bail

15   conditions as soon as we can, but we believe --

16           THE COURT:  I may be able to get them.

17           MR. VELAMOOR:  So for these reasons, given the

18   defendants' burden to prove by clear and convincing evidence

19   that they are not a risk of flight, we don't think they could

20   be meet that burden.

21           THE COURT:  Let me look at the bail conditions.

22           It looks like, as to Mr. Muir, a $400,000 bond, to be

23   signed by February 23, 2016, cosigned by defendant's wife by

24   March 5, 2016, secured by defendant and defendant's wife

25   interest in Overland Park, Kansas.  I assume residence.

HAD8TUC2

1   Surrender passport and make no new applications.  Travel to

2   District of Kansas, Western District of Missouri, Southern and

3   Eastern Districts of New York.

4          As to Mr. Tucker, it looks like a $2 million personal

5   recognizance bond, to be signed by February 23, 2016, and

6   cosigned by three financially responsible persons by March 5,

7   and secured by property at 2405 West 114th Street, Leawood,

8   Kansas, owned by defendant and his wife.  Surrender passport

9   and make no new applications.  Travel restricted to the same

10  districts as in the case of Mr. Muir.  Defendant will not use

11  any private plane, will transfer control and custody of any

12  private plane to a third party acceptable to the government.

13         Now, I don't know whether there was any modification

14  after that.  I will ask defense counsel whether they are aware

15  of any.  And I will hear from Mr. Tucker's counsel.

16         MR. GINSBERG:  First, your Honor, I'm not aware of any

17  modifications from the time I entered the case.

18         I understand what the government's argument is.

19  However, as your Honor heard during the course of this trial,

20  and probably knew from pretrial motions, these proceedings,

21  before even the criminal charges were brought, have been going

22  on for a long time.  Mr. Tucker was well aware, given the FTC

23  lawsuit, and then the criminal indictment, that he faced the

24  possibility of conviction.  However the government wishes to

25  frame what his beliefs were, it was his hope that he was not

3359

HAD8TUC2

1    going to be found guilty.

2            He has travelled back and forth to New York, and other

3    places that the Court permitted, on many occasions.  He has a

4    family.  He has a wife and two children.  His house is part of

5    the bail package.

6            THE COURT:  How old are the children?

7            MR. GINSBERG:  16 and 18, your Honor.

8            THE COURT:  Go ahead.

9            MR. GINSBERG:  He obviously attended all of the

10   proceedings here and the trial knowing what the evidence was as

11   it was being presented.

12           In terms of the two more specific allegations, that

13   is, the government has some, I think at the moment, unfounded

14   belief that he has assets that he could use if he remained out

15   on bail, and I suppose they suggest by that that he could use

16   to flee, not just this jurisdiction and Kansas, but the

17   country.  I don't know that there is any basis for that

18   whatsoever.  The government might have a belief, but I don't

19   believe there is any evidence of that.

20           As to the one flight that was paid for by his friend

21   and was a first-class ticket, whatever that amount of money

22   was, the cost of a flight from Kansas to New York round-trip is

23   far different from what kinds of financial resources Mr. Tucker

24   or any defendant would need if he intended to leave the United

25   States and to live elsewhere.  Certainly, we have no reason to

HAD8TUC2

1    believe that that would happen, but even just looking at the

2    financial factors, I don't believe that is a basis to change

3    his bail conditions.

4           Beyond that, your Honor, the Court has the ability to

5    add additional conditions to the current bail and modify it in

6    a number of ways.  The Court could order home confinement, the

7    Court could order electronic monitoring and more regular

8    reporting to pretrial services, and all kinds of things that I

9    think would ensure the Court that he is being watched on a

10   regular basis and would not have really the ability to flee.  I

11   am sure it's happened in the past, but I think your Honor could

12   impose conditions that are stricter than they are now and would

13   ensure his compliance with any new bail conditions.

14          But overall, your Honor, I think that the fact that

15   this matter, the whole matter, that is, all of the allegations

16   had been going on for such a long time, and that all during

17   that period of time, frankly, even before the FTC decided to

18   freeze his assets, if Mr. Tucker wanted to, he could have left

19   the United States.  He might have had more assets to take with

20   him before they were frozen by the FTC.  He had the ability to

21   run up to this case.

22          I should also make the Court aware that prior to the

23   charges being filed in this case, when Mr. Tucker had counsel,

24   private counsel both in Kansas and in New York, there was a

25   very long process, I am not sure exactly the amount of time,

1    but months and months, if not more than a year, in which his

2    lawyers engaged with the United States Attorney's Office in an

3    effort to convince them not to bring charges.  They were

4    unsuccessful in doing that.  They were told they were going to

5    be unsuccessful in doing that.  There was an initial indictment

6    in this case, which charged only a few of the counts, then a

7    superseding indictment was brought, and during that entire

8    time, he continued to remain in the United States, and he

9    continued to remain to obey the conditions of his bail.

10           THE COURT:  The elephant in the room, of course, is

11    that was at a point in time before he was convicted.  He put on

12    a substantial defense, and the jury has convicted him, and now

13    the calculus changes.

14           MR. GINSBERG:  That's always the case when there is a

15    conviction, your Honor.  I understand that.  I don't think,

16    however, that given the way that the statute is written, that

17    the Court could not set additional conditions, modify the

18    current bail in such a way as to ensure to the Court that Mr.

19    Tucker will return, will not leave the country and will come

20    back for his presentence interview and come back for his

21    sentence.

22           I think that's particularly so, besides all the other

23    things, I want to stress again his family.  It's one thing if

24    you have an individual who doesn't have a family, and whether

25    they have a lot of money or a little money, they could take off

HAD8TUC2

1    and be on their own someplace else in the world.  But when you

2    have a wife and two children, I think that becomes much less

3    likely that you would do that, for all the obvious reasons.

4         So I would urge your Honor to impose additional

5    conditions on Mr. Tucker, such as those I had recommended and

6    anything else your Honor believes would be appropriate, and I

7    think that would ensure that he returns to court when required.

8         THE COURT:  All right.  Let me hear from Mr. Bath.

9         MR. BATH:  Thank you, Judge.

10        Mr. Muir was born in -- there have been no

11   modifications.  Mr. Muir was born in Australia but has lived in

12   the United States since 1978.  I believe he is a lawful

13   permanent resident, is the correct term.  He of course is

14   married.  His wife Stephanie is a lawyer in Kansas City.

15   Mr. Muir's mother lives in Kansas City.  Stephanie's mother is

16   from Kansas City.  He has an eight-year-old daughter and a

17   12-year-old stepdaughter at home.  He has, frankly, like Mr.

18   Ginsberg said, I think every reason to continue to comply with

19   his bond conditions, to make sure he can go home and take care

20   of his family and make sure arrangements are made anticipating

21   that he could very well be going to prison.

22        I think, like Mr. Ginsberg said, I think there can be

23   modifications made.  Mr. Muir has shown up for every court

24   appearance.  He has made all of the appointments with

25   presentence.  They come and visit his house, etc., etc.  I

HAD8TUC2

1    recognize the calculus has changed, but I think he has

2    motivations and you have assurances that he will appear for all

3    future court appearances.

4            THE COURT:  I am going to allow the two defendants to

5    remain free pending sentencing, and I am going to impose

6    changed conditions:  Home confinement with electronic

7    monitoring and strict supervision.

8            This is not a situation where there will be

9    modifications to go out of the home for employment purposes.

10   It will be up to the discretion of the probation officer or

11   pretrial services officer, but my expectation is the exceptions

12   would be for any medical appointments or religious observances,

13   and that's about it.

14           The other thing, I am asking my deputy to give me a

15   date for sentencing, and I do not anticipate adjourning the

16   date for sentencing.  So that's the way this will be.  So if

17   the thought is that sentencing is going to get put off

18   indefinitely while reports are going to be prepared,

19   psychological reports, medical reports or the like, I don't

20   anticipate that.  So I am putting the cards face up on the

21   table.

22           Let me give you a date for sentencing.

23           MR. GINSBERG:  Your Honor.

24           THE COURT:  One second, please.

25           MR. GINSBERG:  I'm sorry.

HAD8TUC2

1          THE COURT:  Yes, Mr. Ginsberg.

2          MR. GINSBERG:  I was just going to ask your Honor

3     about the time.  I am sure your Honor is aware that usually

4     completion of the probation report and things of that nature

5     take these days at least 90 days or longer.  So I would ask

6     your Honor to consider putting the sentence off till late

7     February or early March.  I know I have a couple of commitments

8     out of town in February.  As your Honor said, you don't want to

9     change the date.  So I think that would be safer.

10         THE COURT:  I have a sentencing date that I am going

11    to set, and I am going to ask for an expedited report from

12    probation.

13         Flo.

14         THE DEPUTY CLERK:  January 5, 2018, for Mr. Muir at 2

15    p.m., and for Mr. Tucker at 3 p.m.

16         THE COURT:  Yes, sir.

17         MR. VELAMOOR:  Just on the bail issue.  My belief is

18    that both defendants are being supervised out of the district

19    of residence, which I think is Kansas.

20         THE COURT:  Yes.

21         MR. VELAMOOR:  I am assuming there is going to have to

22    be some kind of coordination with the office there where they

23    will impose these conditions.  We have some concern as to how

24    quickly and efficiently that is going to be done, especially

25    since we are now on Friday afternoon.  This intervening time

HAD8TUC2

1   period gives us great concern before the electronic monitoring

2   is put in place.  We don't know, frankly, what flights, when

3   the defendants plan to return.

4        THE COURT:  Let me find out.

5        When does Mr. Tucker plan to return?

6        MR. ROTH:  For the record, Mr. Tucker has been here

7   for the duration of the trial and hasn't gone back, and he was

8   here two weeks before, so he has been here seven weeks.  He

9   will pack up his stuff and head out no later than Sunday.  And

10   I would indicate that there is correspondence.  I met with

11   pretrial here during the course of this trial last week.  So

12   they are in touch with Kansas people over there.

13        THE COURT:  I am sure they are.

14        I am going to leave it to the assistant United States

15   attorneys to be in touch with pretrial services to inform them

16   of the bail modification and to get their assistance.

17        MR. VELAMOOR:  That's fine.  Can we also, perhaps,

18   have a court deadline by which we could use to incentivize the

19   office over there to impose the conditions, the electronic

20   monitoring and home detention.  We would also ask, even before

21   that bracelet is put in place, that they remain in home

22   detention.

23        THE COURT:  The home confinement starts as of now.

24   The electronic monitoring, that I would anticipate would be

25   completed by Tuesday of next week.

HAD8TUC2

1           MR. VELAMOOR:  OK.

2           THE COURT:  Existing bail conditions for Scott Tucker

3    and Timothy Muir continue, with home confinement effective

4    immediately and electronic monitoring to be implemented by

5    pretrial services by October 17, 2017.

6           Anything further from the government?

7           MR. VELAMOOR:  Nothing further, your Honor.

8           THE COURT:  Anything further from the defendants?

9           MR. BATH:  Mr. Muir might go back tonight, planning to

10   come back on Sunday.  So I think we will stick with that plan.

11   He will go home and he will be home, and I will work out

12   getting everything back to Kansas City.

13          THE COURT:  I have no objection to that.

14          Anything else?

15          All right.  I don't think there is anything else to be

16   said.  I said what I said before the jury verdict after the

17   jury was charged, and I certainly hope that the lawyers who

18   worked so hard get some peace and reacquainted with their

19   families.

20          We are adjourned.

21          (Trial concluded)

22

23

24

25