IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cr-91 (PKC) |
| | ) | |
| TIMOTHY MUIR, | ) | |
| Defendant. | ) | |

## TIMOTHY MUIR'S SENTENCING MEMORANDUM

**COMES NOW** the defendant, Timothy Muir, by and through counsel, Thomas J. Bath, Jr., and submits the following sentencing memorandum:

## BACKGROUND

As outlined in the Presentence Investigation Report (PSR), Mr. Muir is a 46-year-old male who was found guilty on all counts of the 14-count indictment in this case alleging various financial crimes. Mr. Muir was arrested in his home on February 10, 2016, following an indictment on several financial crimes alleged to have occurred from "at least 1997" through 2013. (A superseding indictment followed on November 30, 2016, alleging all of the crimes of conviction.) Mr. Muir appeared on February 23, 2016, and was granted pre-trial release. He was later placed on pre-trial supervision on March 10, 2016. Mr. Muir had no bond violations and appeared for trial beginning on September 11, 2017. On October 13, 2017, the jury returned its verdicts. At that time, Mr. Muir was once again released by the court. Mr. Muir has been "entirely compliant" with the terms of post-trial release. (PSR ¶ 15). He is scheduled to appear before the court for sentencing on January 5, 2018.

**ARGUMENT AND AUTHORITIES**

Mr. Muir's PSR indicates a total offense level of 50, which is treated as a 43 pursuant to Chapter 5 of the sentencing guidelines manual. This level is achieved after adjusting the base offense level of 7 by: amount of loss (+30); number of victims (+2); and sophisticated means (+2); with further adjustments for being convicted of money laundering (+2); being convicted of sophisticated money laundering (+2); using a special skill (+2); and being a manager or supervisor (+3). The advisory guideline range for Mr. Muir's criminal history category (I) at a level 43 is life. However, the highest statutory maximum for any of his crimes of conviction is 20 years, and the aggregate statutory maximum is 185 years. Therefore, guideline range is 185 years. The defense believes that the recommended sentencing range under the advisory guidelines results in a sentence that is far greater than necessary to accomplish the statutory objectives under Title 18 U.S.C. §3553(a), and therefore requests a variance from the guideline range.

The Supreme Court has firmly instructed that sentencing courts "may not presume that the Guidelines range is reasonable." **Gall v. United States,** 552 U.S. 38, 128 S.Ct. 586, 596 (2007) [citing **Rita v. United States,** 551 U.S. 338, 127 S.Ct. 2456 (2007)]. Rather, a sentencing court must make an "individualized assessment based on the facts presented." **Gall,** *128* S.Ct. at 597. The Court has further held that while Federal sentencing judges must properly calculate the applicable Guidelines offense level and give it "respectful consideration," they have discretion to determine that "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." See **Kimbrough v. United States,** 552 U.S. 85, 128 S.Ct. 558, 564, 570 (2007). **Kimbrough** directs that a court's final determination of a sentence must reflect

"§3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in 3553(a)(2)," namely - retribution, deterrence, incapacitation, and rehabilitation. See **Kimbrough** at 575.

This sentencing memorandum is submitted on behalf of Tim Muir to provide this Court with information necessary to impose a sentence which is sufficient but not greater than necessary to achieve the statutory purposes of punishment. This memo will discuss Mr. Muir's case within the framework of the statutory objectives under §3553(a), as they relate to the length of the requested variance from the guidelines as well as other factors this court should consider.

18 U.S.C. 3553 provides that a sentencing court shall consider, among other factors, the following when imposing a sentence that is "sufficient but not greater than necessary": (1) the nature and circumstances of the offense and the history and characteristics of the defendant and (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a).

**Applicable §3553(a) Factors that Warrant a Sentence below the proposed guideline range**

    **I.    §3553(a)(1) - The history and characteristics of Timothy Muir**

Mr. Muir presents to the Court as an individual who is a caring and very involved father for his daughter Adele (age 8) and his step-daughter Kelsie (age

13), who has been raised predominantly in his home since she was three years old, as well as a loving husband to their mother, his wife of ten years, Stephanie. Tim has always been actively involved in both of his children's lives including being a coach for Kelsie's soccer and tennis teams and Adele's softball teams for years and the official, volunteer, announcer for Adele's diving competitions.

Mr. Muir's has no criminal convictions. He had a few minor contacts with law enforcement between ages 17 and 19, all of which were dismissed. His most serious law enforcement contact prior to the instant case was for a DUI approximately 18 years ago. Tim successfully completed a 12-month diversion program and that charge was dismissed.

Mr. Muir has a longstanding history of being an extremely charitable individual who has donated countless hours on behalf of charitable and philanthropic causes here in the Kansas City area. He has been a longstanding member and active participant on the Johnson County Kansas Bar Foundation Board of Trustees, often giving not just his time to raise money but giving his own money to the various charities served by the Bar Foundation.

Mr. Muir is an individual who was a productive member of society for many years before and even after his indictment in this case. Since the jury's verdicts were returned, Tim has voluntarily ceased his work with the Bar Foundation board and its charitable organizations so that his involvement, given the significant media coverage of his case, might not distract from the organization's goals. Additionally, because of the significant media coverage,

4

Tim feels that he has brought stigma upon not just himself but also upon his family and close friends. Notwithstanding this, his family and friends continue to be supportive of him and urge this court to give consideration to Tim's good works in his community and with his young daughters.

This court should also give consideration to who Tim was when he went to work for Tucker. Tim was only two years out of law school, having been a Godfather's pizza manager up until law school, when he went to work for Tucker. By then, the payday lending companies were in full swing, generating the kinds of profits that allowed Tucker to have exotic cars and take extravagant trips and offer handsome wages for his new legal staff—all of this having been set in motion without Tim's involvement. The allure of being two years out of law school and earning the kind of money that Tucker could offer was strong. Tim went to work for Tucker and followed the lead of the many, many lawyers who had consulted Tucker on payday lending matters before him in advising Tucker as to the legality of his operations.

**II.     The Need for the Sentence**

Sentencing should be proportional, rational and reasonable to reflect the seriousness of the offense, promote respect for the law, and provide *just* punishment for the offense as well as *adequate* deterrence and protection of the public. Application of draconian guideline ranges that fail to properly apportion punishment, do nothing to meaningfully address an individual's conduct or culpability. The guideline range in the PSR tops out at 185 years, on crimes for which the highest single statutory maximum

5

sentence is 20 years. To suggest that Mr. Muir should be at the high-end of even this single statutory maximum, given his relative culpability or relative gain from the offense conduct, is not reasonable.

A. **Courts continue to recognize that the fraud guidelines provide a result that is inconsistent with the 18 USCS §3553 factors directing the court to consider the need for the sentence**

Various courts have begun to recognize that the fraud guidelines, if mechanically applied, may result in sentences that are greater than necessary. Federal judges around the country are struggling with the draconian sentences called for by the fraud guidelines (i.e. in this case a 30-point adjustment for amount of loss which puts the defendant at a recommendation of at least 17 years even before any other enhancements). The results caused from the application of these guidelines are inconsistent with 3553(a) and its requirement that district court consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and violate the principle that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct. *See **Gall v. United States**,* 552 U.S. 38, 55, 128 S.Ct. 586 (2007).

Utilizing the guidelines for financial offenses can often result in a sentence that is disparate and patently unfair. This is so because of their over-emphasis on loss amount and "doubling-up" on additional point enhancements for offense characteristics. As such, the fraud Guidelines have faced criticism by courts in this district and beyond. In **United States v. Adelson**, 441 F. Supp.2d 506 (S.D.N.Y. 2006), the court stated:

> To put this matter in broad perspective, it is obvious that sentencing is the most sensitive, and difficult, task that any judge is called upon to undertake. Where the Sentencing Guidelines provide reasonable guidance, they are of considerable help to any judge in fashioning a

6

sentence that is fair, just and reasonable. But where, as here, the calculations under the guidelines have run so amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences.

**Id.** at 515. In **Adelson,** the court imposed a sentence of 42 months after calculating an advisory guideline range of life imprisonment. **Id**. at 509, 514. See also, **United States v. Gupta**, 904 F. Supp. 2d 349 ("This Court has already had occasion to comment on the unreasonableness of this approach in **United States v. Adelson**, 441 F. Supp.2d 506, (S.D.N.Y. 2006), and hereby adopts by reference the observations made there."). In **Gupta**, the court imposed a sentence of 24 months after calculating an advisory guideline range of 78 to 97 months' imprisonment. **Id.** at 353, 355.

In **United States v. Parris**, 573 F. Supp. 2d 744 (E.D.N.Y. 2008), Judge Block, after conducting an in-depth analysis of sentences in securities fraud cases nationwide, noted his disagreement with the advisory guidelines:

> While I acknowledge that the Guidelines "reflect Congress' judgment as to the appropriate national policy for such crimes," this does not mean that the Sentencing Guidelines for white-collar crimes should be a black stain on common sense. Fortunately, thanks to the Supreme Court, district courts are now "allowed to impose a sentence that varies from the Guidelines based solely on…disagreements with the Guidelines," as long as they "state the basis for [their] disagreement along with 'sufficient justifications' for 'the extent of any departure.'" **Cutler,** 520 F.3d at 163 (quoting **Gall**, 128 S. Ct. at 594).

**Id.** at 754-755. Judge Block went on to impose "a term of incarceration of 60 months in the face of an advisory guidelines range of 360 to life." **Id**. at 745.

As noted, the guidelines take Mr. Muir's offense level to a 37 based upon amount of loss, even before any further enhancements are applied. After applying enhancements for number of victims, sophisticated means, money laundering,

7

sophisticated (again) money laundering, special skill and role in the offense, the adjusted level is 50—thirteen levels higher than the maximum on the sentencing table and anticipated by the commission to be a "rare case" (See Chapter 5, Part A, application note 2). The **Adelson** court called this—in that case a combined 20-point-enhancement—"piling-on" and noted that the guidelines had been frequently criticized for being "ill-fit" in this situation. **Adelson** at 510.

This "piling-on" of points results in repeated counting of aspects of the case or double-counting of conduct. For example, the full loss amount is assessed against Mr. Muir because of his alleged managerial role in the offense *and* his sentence is enhanced by three points because of this role. He is given an enhancement of the offense involving sophisticated means and later enhanced again because of the money laundering reference and for the money laundering having been accomplished by sophisticated means (Mr. Muir has objected to this enhancement because he was convicted as an aider and abettor and had no direct role in whatever means Tucker used to commit the money laundering). Mr. Muir also received an enhancement for use of a special skill, the fact of which is part of the conduct that resulted in the sophisticated means enhancement (Mr. Muir has also objected to this enhancement because his job as a lawyer neither helped facilitate nor conceal the offense.)

**B. The proposed guideline sentence is greater than necessary to achieve adequate deterrence and to provide protection for the public**

In this case, deterrence and protection of the public from future crimes by Mr. Muir go hand-in-hand. This was not a violent offense but one that involved a very specific means. Mr. Muir's role in the conduct was that of a lawyer. Because of these convictions, Mr. Muir has lost the ability to practice law and thereby to reoffend in the

manner alleged in the indictment.

Mr. Muir will also be deterred by the harshness of the penalties imposed that are in addition to his incarceration. Mr. Muir has lost the ability to support himself and his family in his trained profession. He has witnessed his family suffer greatly and because of his actions, they will struggle financially. They will struggle with his absence during any period of incarceration. And his daughters, who witnessed his arrest at gunpoint remain in counseling. Regarding any need to protect the public, statistics regarding recidivism and age, personal history, family structure and the circumstances of the offense, suggest that it is extremely unlikely that Tim will engage in future criminal activity.

As for general deterrence, in the case of economic offenses, "common sense suggests that most business executive fear even a modest prison term to a degree that more hardened types might not." **U.S. v. Gupta**, 904 F. Supp. 2d 349, 355 (S.D.N.Y 2012). "[T]here is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." **Adelson**, 741 F. Supp. 2d at 514.

**C. The proposed guideline sentence is greater than necessary to achieve just punishment**

As noted in the PSR, Mr. Muir is a citizen of Australia, currently has "ICE" detainer, and faces possible removal proceedings based upon his convictions. The additional penalty of being removed from the country where he has resided since he was seven years old should be considered when determining how much incarceration he should serve before he is deported. The U.S. Supreme Court has observed that

"[o]ur law has enmeshed criminal convictions and the penalty of deportation for nearly a century," and accordingly the Court has "long recognized" that deportation is "particularly severe." **Padilla v. Kentucky**, 559 U.S. 356. 366-67 (2010). In the instant case, when Mr. Muir is removed from this country, he and his family will be faced with a situation where his wife and daughter Adele could choose to join him only if they also choose to leave behind Stephanie's daughter and Adele's half-sister, Kelsie, who has parenting time with her natural father. Tim will not ask his wife and daughter to make that choice and instead will be faced with a life of living in Australia with a wife, daughter and step-daughter here in the United States. Under these circumstances, the penalty of deportation is high and is tantamount to banishment. See **Fong Haw Tan v. Phelan**, 333 U.S. 6, 10 (1948) ("[D]eportation is a drastic measure and at times the equivalent of banishment or exile").

"In determining what sentence is 'sufficient but not greater than necessary' to serve the needs of justice, 18 U.S.C. 3553(a), a district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family." **United States v. Pratheepan Thavaraja**, 12-CR-4330 (2d Cir. January 23, 2014). See, e.g., **United States v. Guzman**, 236 F.3d 830, 834 (7th Cir. 2001)(Posner, J.)(Noting that a defendant's status as a deportable alien is relevant to the extent that it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense.). This court should consider the high price that will be paid, not just by Mr. Muir but by his family, not if, but when he is deported, when determining

what sentence of incarceration is just.

Finally, the court in determining what punishment is just, the court should consider Mr. Muir's relative culpability. **Gall**, *supra*, directs courts to guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct. *See* **Gall v. United States,** 552 U.S. 38, 55, 128 S.Ct. 586 (2007). While Mr. Muir and Mr. Tucker were charged with the same offenses and participated in some of the same conduct, other aspects of their conduct, even under the government's theory, were quite dissimilar.

Relative culpability is usually discussed in terms of guideline adjustments for role in the offense. However, it can be applied to a §3553 analysis. In **United States v. Lopez***,* 937 F.2d 716 (2d Cir.1991), the court stated that "the defendant's role in the offense is determined 'not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, ... but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction....' " **Id.** at 728 (quoting **United States v. Daughtrey,** 874 F.2d 213, 216 (4th Cir.1989)); **see United States v. Caruth***,* 930 F.2d 811, 815 (10th Cir.1991) ("the Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime"). What these cases suggest is that Tim Muir's conduct and culpability can and should be compared to that of Scott Tucker when determining what sentence is just for Tim.

The indictment and evidence at trial suggest that Tucker had begun his criminal enterprise by "at least 1997," along with "coconspirator 1," while Tim did not begin

working for Tucker until 2006. This means that of the sixteen years of the conspiracy, Tim was only involved in the last seven years. While the PSR suggests that Tim was architect of the scam, it notes elsewhere, as supported by the evidence, that the relationships with the tribes began in 2003, three years before Tim came to work for Tucker and before Tim had even graduated from law school.

While the PSR suggests that Tim should be held responsible for the full loss amount, the defense encourages the court to mitigate Tim's sentence not just in relation to his specific acts in relation to the relevant conduct that makes up the loss amount but also his relative gain from the alleged acts. As noted in the PSR and at trial, Tucker profited to the tune of hundreds of millions of dollars. The payments to Tim Muir's law firm were shown to be roughly ten million dollars. Of that, approximately *half* was shown to have been paid to outside counsel. Of the roughly five million that was paid to Tim's firm, other lawyers, staff and taxes were also paid. The PSR notes that Tucker spent more than $100 million on luxury homes and automobiles, a private plane and expenses related to his "professional racing team which races Ferraris throughout the world." Tim, on the other hand, lives in a modest three-bedroom home with no private plane, no racing team, no vacation home and no exotic automobiles. Clearly, Tim's financial benefit from the enterprise was miniscule compared to that received by Tucker (and others). In order to be just, his sentence should reflect that his gain with regard to the extraordinary loss amounts was *de minimus* when compared to Tucker's.

## CONCLUSION

The question that must be answered by the Court is what sentence is reasonable as it relates to the §3553 factors. In answering that question, the court should consider that the fraud guidelines in general call for a sentence that is greater than necessary to achieve the statutory goals of sentencing. Moreover, as to Tim Muir, his relative culpability or relative gain, his impending deportation, and his background and history mandate a sentence well-below the advisory guideline range.

**WHEREFORE,** for the above and foregoing reasons, Mr. Muir requests that the Court order a sentence that is in keeping with the objectives of 18 USCS §3553.

Respectfully submitted:

*/s/ Thomas J. Bath, Jr.*

_____
Thomas J. Bath, Jr.                #12971
**BATH & EDMONDS, P.A.**
7944 Santa Fe Drive
Overland Park, KS   66204
Phone:  (913) 652-9800
Fax:     (913) 649-8494
Attorney for Timothy Muir


## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2017 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties of record herein.

_____*/s/ Thomas J. Bath, Jr.*_____
Thomas J. Bath, Jr.